## Township of Paw Paw v. Harry L. Eggleston and others.

*Township treasurer: Official bond: Sureties: Liability.* Sureties upon the official bond of a township treasurer for his second term of office, who were not upon his bond for his first term, are not liable for the default of their principal during such first term. The official terms are wholly distinct; and the official bond covers only the term, and the official defaults of the treasurer during the term, for which it is given, and the fact that the same person held the office for both terms, does not affect the question.

*Heard April 19.    Decided April 23.*

Error to Van Buren Circuit.

*Arthur Brown* and *H. F. Severens,* for plaintiff in error.

*J. R. Baker* and *M. J. Smiley,* for defendants in error, were stopped by the court.

CHRISTIANCY, CH. J.

The defendant Eggleston was the treasurer of the township for two terms, the first commencing in April, 1869, and ending April, 1870. He was re-elected at the township election of 1870, and held the office until April, 1871. During the first term he had used some of the township's moneys and became a defaulter for a considerable amount, and so remained at the close of the first term, though this fact does not seem to have been known to the township board or to the public.

But all the money that came into his hands during his second term, except that properly paid over to his successor, was faithfully paid out for the township as required and properly accounted for, and he even paid out for the township, including that paid to his successor, three hundred dollars more than came into his hands during this term,

reducing to that extent the amount of the defalcation of his first term.

This action is brought upon his official bond given for his *second* term, the other defendants being his sureties upon this bond; and the only question is, whether *these* sureties can be held liable for the default of their principal, which occurred during his *former* official term, for which they were not his sureties.

It would seem that the very statement of such a case, under the system established by our constitution and statutes, ought to constitute a decision of it.

But it is ingeniously urged by the counsel for the township that, inasmuch as the treasurer in this case had been treasurer the previous year, and was, therefore, his own successor, and was a defaulter to the township in his former term, the law governing the application of payments made without any special application of them by the debtor, gave the township the right to apply the payments made by the treasurer during his second term, in reduction of the amount due from him at the close of his first term; and this even as against his sureties for the second term, though he had faithfully paid over every dollar received by him during the second term, for which alone they had become his sureties; and the case of *Sandwich v. Fish, 2 Gray, 298,* is cited in support of this view. From the brief report of this case it is not easy to determine without a full examination of the Massachusetts statutes and their systems of collecting taxes, whether it involved the principle for which it is cited. But it would seem that the sureties who were the same on the bonds for 1847, 1848, 1849, and 1850 were held liable on account of a balance due from the collector, or rather in his hands, at the beginning of the first year. The form of the account given in evidence by the defendants, seemed

to admit·this balance as in his hands at the beginning of the first year, for which they were sureties; and if the money was actually then in his hands and he was not a defaulter, as it does not appear that he was at the beginning of the first year (1847), there was good ground for the decision. It is rather to be inferred that this was the ground of the decision from the remarks of the court that, "the bond of the collector is undoubtedly for each year, and would not of itself render the collector and his sureties liable for the balance of the account for a previous year."

But whatever may be the effect or the true ground of the decision in that case, and however correct it may be under the statutes and system of collecting taxes and official accounting in that state, we are entirely satisfied that it can afford us no justification for holding the sureties of the treasurer for the second year, in the present case, liable for the default of the treasurer during, or at the close of, his first year, whether there was or was not an actual accounting at the end of the first year, or whether the township board were aware of the default or not. The constitution and the law make the office of the township treasurer annual, and require his election in April of each year. The statute requires him, within ten days after notice of his election, to take and subscribe the constitutional oath of office (*Comp. L.*, § *538*), and within the same time (§ *569*), to "give bonds to the township, in such sum etc.," conditioned for the faithful discharge of the duties of his office, and that he will faithfully and truly account for and pay over according to law, "*all moneys which shall come into his hands as such treasurer.*"

The duties of his office here referred to, are the duties of that office *for the year for which he has thus recently been elected and for which the bond is given*, and not for any former

year; and the condition as to accounting and paying over, extends only to "moneys which *shall come* into his hands as such treasurer."

Now this statute applied as well to the first year as to the second; and we are bound to presume that he duly gave bonds with sureties duly approved for the first year, as he could not otherwise have been such treasurer, and the office would have become vacant.—*Comp. L.* §§ *475 549.* As treasurer for the *first* year, therefore, it was his duty to pay over to his successor the whole of the township moneys then in his hands, or the amount then due from him to the township for moneys which came into his hands during that year; and his failure to do this would constitute a breach of his official duty and of his official bond for *that* (first) year, upon which his sureties on *that* bond would be liable. And upon what principle of justice, it may well be asked, can that liability, for which *they* have contracted, be cast upon the sureties for the next year, who never contracted to assume it, or at least had no reason to suppose they were assuming it by their contract? Any course of logic, however supported by supposed legal analogies, which leads to a result so grossly unjust, not to say absurd, must be too refined for practical use in the administration of justice.

Neither the principles involved in this case nor their proper application, are in any way affected by the fact that the treasurer for the second year happened to be the same person who had held the office the year before. The official terms are wholly distinct, and the official bond covers only the term, and the official defaults of the treasurer during *the term, for which* it is given; and no mere fiction of law, or theory of the character in which the treasurer holds the money—as whether he is to be regarded as a debtor only (the property in the particular money being in him), or as

bailee of the money belonging to the township—can in any manner affect the question. The liability of the sureties depends wholly upon the bond they have executed, the condition of which is plain and simple, and entirely unaffected by any theory of the particular character in which he holds the money which may come into his hands as treasurer. The following, among other cases, will be found fully to sustain the view we have taken of the question of the liability of the sureties upon this bond.—*United States v. Eckford's Exrs., 1 Howard, 250 ; Porter v. Stanley, 47 Me., 515 ; United States v. January, 7 Cranch, 572 ; Postmaster General v. Norvell, Gilpin, 106.* We think the principle well settled, and until questioned in this case did not suppose it could admit of a serious doubt had there been no authority upon the subject.

The charges asked by the defendants, and given by the court, were correct in every particular.

The judgment of the circuit court must be affirmed, with costs to the defendants in both courts.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, J., did not sit in this case.