Argued 20 October, decided 16 November, 1903.

## LAKE COUNTY *v.* NEILON.

[74 Pac. 212.]

TAX COLLECTOR'S BOND—LIABILITY OF SURETIES FOR PAST DEFALCATIONS.

1. The sureties on the official undertaking of a tax collector, which stipulates that the sureties will make good "all moneys that may or shall come into his hands as tax collector" that he does not faithfully account for, are liable for all tax moneys previously received which the tax collector had on hand at the execution of the undertaking, and all moneys subsequently collected in his official capacity, but are not liable for prior defalcations, if any, unless the money had been restored at the time of the making of the undertaking, or was thereafter restored.

LIABILITY FOR MONEY COLLECTED ON VOID WARRANT—ESTOPPEL.

2. The fact that taxes were collected by a tax collector under a defective warrant, or without any warrant, constitutes no defense to the sureties, when sued for the collector's conversion of the money so collected, for the officer and his sureties are estopped by his acts in taking the money from the taxpayers.

LIABILITY OF TAX COLLECTOR FOR COLLECTIONS BY DEPUTIES.

3. Where tax collections are made by a public official by virtue of his office, though under a defective warrant, or without a warrant, the entries made by his deputies, tending to show the collection of taxes by them, are binding on the collector's sureties.

CONSTRUCTION OF STATUTE REQUIRING PERIODICAL PAYMENTS.

4. Section 2797, Hill's Ann. Laws, requiring tax collectors to pay to the county treasurers once in every thirty days the tax money then collected is intended to protect the counties, and does not affect the liability of sureties of tax collectors, whose undertaking is that they will account for the tax money, and not that they will make the periodical reports referred to in the statute.

PRESUMPTION FROM FAILURE TO MAKE REQUIRED PAYMENTS.

5. The presumption arising from the failure of a tax collector to make the periodical payments of tax money to the county treasurer required by Section 2797 of Hill's Ann. Laws is that the officer has merely retained the money rather than that he has converted it.

OVERCOMING DISPUTABLE PRESUMPTION.

6. A disputable presumption may be overcome by either direct or indirect evidence, or both, and it is error to withdraw from the consideration of the jury inferences affecting such a presumption. For instance, after a court has instructed a jury that presumably a tax collector has on hand when he files his tax collector's special bond whatever money has been collected but not paid into the county treasury, it is reversible error to add that this presumption must be overcome by satisfactory evidence, and cannot be overcome by mere inferences, for the indirect and inferential circumstances are competent under the statute.

From Jackson : H. K. HANNA, Judge.

This is an action by Lake County on the official under-taking of A. J. Neilon, as tax collector, and his sureties, to recover for his defalcation. Neilon was sheriff, and, as such, the tax collector of Lake County, between July 5, 1898, and July 2, 1900. He served until May 6, 1899, before the additional undertaking was given (being the one sued on), which is conditioned that "if the said A. J. Neilon shall not faithfully pay over according to law, all moneys that may or shall come into his hands as tax collector as aforesaid, then we will pay the State of Oregon the said sum of ten thousand dollars." It is alleged by the complaint, in effect, that on the said 6th day of May, 1899, Neilon, as tax collector, had in his possession taxes of Lake County, collected by him as such officer, to the amount of $3,674.88 ; that between the time of the execution of said undertaking and the 3d day of July, 1900, he collected in addition thereto the sum of $59,960.12 upon the tax rolls of the county; that he has accounted for and deposited with the county treasurer $57,181.11 of the money so collected as taxes, and no more, leaving a bal-

ance of $6,453.89, which he has failed and neglected to pay over to the county treasurer, or otherwise account for; and that, of the amount so paid over, the sum of $1,224.03 was collected prior to the execution of said undertaking. At the trial there was introduced in evidence on the part of the plaintiff, and admitted over objection, all that part of the tax roll of Lake County for 1893 identified by the initials "L," "N," and "H," to which was attached the warrant of the county clerk, directed to the sheriff, bearing date February 19, 1894; also all that part of the tax rolls for 1894 and 1895 so identified, with warrants attached, bearing dates, respectively, February 19, 1894, and February 19, 1895; also tax rolls for 1896 and 1897, identified by the initials "L," "H," "B," and "N," with no warrants attached; also all that part of the roll of 1898 identified in like manner, with warrant bearing date March 1, 1899, and the roll of 1899, identified by the initials "L," "H," and "N," with warrant of date March 12, 1900, all of which tax rolls appear to have been certified to by the county clerk. There were also introduced the delinquent lists for the years 1893, 1895, 1896, 1897, and 1898, identified by the initial "H," with certificate and warrant attached to each, except the last, bearing date April 3, 1900. All these several rolls were in the sheriff's office and possession at intervals only. The initial "N," where occurring, was made by Neilon himself, "L" by Joseph S. Lane, "B" by Beall, and "H" by Frank Houston, who were the deputies of Neilon at the time; the initials being attached to statements on the rolls under the head of "Remarks," tending to show the amount of money received for taxes during Neilon's term of office. Judgment having been given for the plaintiff, the sureties appeal. · REVERSED.

For appellants there was a brief and an oral argument by *Mr. Chas. A. Cogswell* and *Mr. Austin S. Hammond.*

For respondent there was a brief and an oral argument by *Mr. A. Evan Reames,* District Attorney, *Mr. L. F. Conn,* and *Mr. C. L. Reames.*

Mr. Justice Wolverton, after stating the facts in the foregoing terms, delivered the opinion.

1. Counsel for the sureties first insist that they are not liable for moneys received by Neilon prior to the giving of their undertaking. The condition requires them to make good "all moneys that may or shall come into his [Neilon's] hands as tax collector" that he does not faithfully account for. It is prospective in its import and signification, but susceptible of such an interpretation as to embrace all such tax moneys previously received as Neilon had on hand at the time of executing the undertaking, or subsequently collected in his official capacity. As to prior defalcations, if any occurred, where the money had not then or subsequently been restored, the sureties are not bound. Their liability cannot be extended by implication, but must be measured and determined by the fair and legitimate scope of the terms of their undertaking: *Farrar* v. *United States,* 30 U. S. (5 Pet.) 373; *United States* v. *Boyd,* 40 U. S. (15 Pet.) 187; *Myers* v. *United States,* 1 McLean, 493 (Fed. Cas. No. 9,996); *Bruce* v. *United States,* 58 U. S. (17 How.) 437; *Paw Paw* v. *Eggleston,* 25 Mich. 36; *Vivian* v. *Otis,* 24 Wis. 518 (1 Am. Rep. 199); *Pine County* v. *Willard,* 39 Minn. 125 (39 N. W. 71, 1 L. R. A. 118, 12 Am. St. Rep. 622).

2. Counsel next insist that the money paid upon the tax rolls of the county to which no regular warrant was attached was received by Neilon without authority of law, and not in his official capacity, and that the sureties are not liable on their undertaking for his failure to account therefor. The fact that taxes have been collected under a defective warrant, or without warrant, affords no defense,

44 Or.— 2.

either to the officer or his sureties, for a conversion of the funds thus realized. The warrant is the officer's authority to enforce payment, and without it the taxpayer is not obliged to pay; but if he does, especially as in the case at bar, where the tax is upon the roll, and then due and payable, and the officer receives it, the money so paid becomes, at least in equity, the property of the county, and, so long as the taxpayer does not complain, the officer cannot be heard to question the right of the county to require him to account for it. The tax collector, thus possessed of funds to which the county is entitled, was a public functionary, charged with the duty of collecting taxes, and, when paid to him as such, he became accountable in his public and official, and not in his private, character, so that his conduct and accountability are public and official, not private; hence his procedure has been by virtue of his office, and his sureties are liable upon their undertaking for his accountability for the funds so received to the use of the municipality for which he collected them. Whether he received the taxes, as said by Mr. Justice GRAVES in *Berrien County Treasurer* v. *Bunbury*, 45 Mich. 79, 85 (7 N. W. 704, 706), "by the right hand or the left, on papers regular or irregular, with or without a warrant, makes no difference"—their ownership, in equity, and his legal responsibility, are the same. They are paid and received as public revenues, and are covered by his duty and his undertaking and that of his sureties to respond for them to the public municipality entitled thereto. Such is the doctrine of the Michigan case just cited, which is sustained in principal by almost the entire current of authority, and is founded in reason and sound policy. See the exhaustive and valuable monographic note to *Feller* v. *Gates*, 91 Am. St. Rep. 492, 553, on "Acts for which Sureties on Official Bonds are Liable," and cases cited, namely, *Cogswell* v. *Eames*, 14 Allen, 48; *Brunswick* v. *Snow*, 73 Me. 177;

*Frownfelter* v. *State,* 66 Md. 80 (5 Atl. 410); *Combs* v. *Breathitt County,* 20 Ky. Law Rep. 529 (46 S. W. 505); *Fuller* v. *Calkins,* 22 Iowa, 301; *Town of Pawlet* v. *Kelly,* 69 Vt. 398 (38 Atl. 92); *Village of Olean* v. *King,* 116 N. Y. 355 (22 N. E. 559); *McGuire* v. *Williams,* 123 N. C. 349 (31 S. E. 627); *King* v. *United States,* 99 U. S. 229.

3. In this connection it is urged that the entries made by Lane, Beall, and Houston, tending to show that they collected taxes, were inadmissible in evidence to bind the sureties, on the ground that they were not the deputies of Neilon for any act, except such as he was authorized to perform in his official capacity. But we have seen that such collections made by Neilon were made by virtue of his office, so that any collections made by his deputies would necessarily be made by him as principal, and in a like capacity; hence the entries alluded to were binding on the principal and his sureties, and proper to go to the jury for their consideration.

4. The next and last contention is that the court erred in giving to the jury instructions numbered 7 and 8, as follows:

"(7) Whatever amount of money, if any, the defendant Neilon, as tax collector for Lake County, Oregon, had collected for the said Lake County at the time his tax collector's bond was given, over and above the amount of money of said moneys that he had at said time paid over to Lake County, he is presumed, as a matter of law, to have had on hand at the time when said collector's bond was given.

"(8) I will stop here to say, in that connection, that that presumption is a disputable presumption, and may be overcome by evidence satisfactory to your minds, but it cannot be overcome by mere inferences. You cannot infer that he did not have the money, but, if there is any evidence that is direct and satisfactory and satisfies your mind that he did not have the money at that time, then the bondsmen would not be responsible for any such money

collected prior to the date of the bond. On the contrary, the law presumes that the money is in his hands, and I say that presumption must be overcome by some evidence satisfactory to your minds, and not by mere inferences. It might be overcome by showing directly and positively that the money had been lost or had been expended, or in some way had passed out of his hands."

It is urged that the presumption invoked by instruction 7 is not applicable here, being founded, as it is, upon the presumption of the regular performance of official duty; that it was the duty of the sheriff, as tax collector, to turn the money collected by him by virtue of his office over to the county treasurer once in every thirty days (Hill's Ann. Laws, § 2797), and, he not having done so, the presumption that official duty has been regularly performed is overcome, and therefore it will not be presumed that the money is still in his hands, but rather that the officer suffered default, and consequently converted the funds on hand whenever and at the time he failed to comply with the statute. Such, however, is not necessarily the proper deduction in the premises. The statute was enacted for the benefit of the county, and for its protection in requiring frequent settlements on account of public moneys received for its use and benefit, which in no way affects the sureties of the tax collector: *United States* v. *Kirkpatrick*, 22 U. S. (9 Wheat.) 720; *United States* v. *Vanzandt*, 24 U. S. (11 Wheat.) 18; *United States* v. *Nicholl*, 25 U. S. (12 Wheat.) 505; *Board of Supervisors* v. *Otis*, 62 N. Y. 88; *Crawn* v. *Commonwealth*, 84 Va. 282 (4 S. E. 721, 10 Am. St. Rep. 839); *Bush* v. *Johnson Company*, 48 Neb. 1 (66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673). Again, the undertaking is designed to secure the county from loss by reason of official delinquency of the collector, and not against his violation of this statute in failing to make the periodical settlements: *Commissioners of Waseca* v. *Sheehan*, 42 Minn. 57 (43 N. W. 690, 5 L. R. A. 785).

5. While a failure of the officer to make the settlement once in every thirty days, if funds have been collected, would constitute a default in the regular compliance with the statute, for which he is subject to punishment, and affords some evidence upon which to base an inference that he did not then have the proper funds on hand, yet it would not of itself afford evidence of a default by a conversion thereof which the law would deduce from the fact. In other words, it does not follow that, because the officer has failed to make the periodical settlements required by law, he has converted such money as he may have had on hand to his own use. The presumption will still obtain that he yet has the money on hand, rather than that he has committed the more grievous offense of embezzlement, and the burden is upon the sureties to show a prior defalcation: *Kelly* v. *State*, 25 Ohio St. 567; *District Tp. of Fox* v. *McCord*, 54 Iowa, 346 (6 N. W. 536); *Pine County* v. *Willard*, 39 Minn. 125 (12 Am. St. Rep. 622, 1 L. R. A. 118, 39 N. W. 71); *Bruce* v. *United States*, 58 U. S. (17 How.) 437.

6. The presumption is not conclusive, but disputable, and disputable presumptions may be overcome by other evidence, direct or indirect: B. & C. Comp. § 786. "Direct evidence" is defined to be "that which proves the fact in dispute directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact": B. & C. Comp. § 684. Indirect evidence consists of inferences and presumptions. "An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of the law to that effect," and "a presumption is a deduction which the law expressly directs to be made from particular facts": B. & C. Comp. §§ 782–784. These definitions are both elementary and statutory. Now, the court told the jury that the presumption that Neilon had the money previously collected in his

hands at the time the undertaking was given could not be overcome by mere inferences; that they could not infer that he did not have the money, but that the presumption might be overcome by a showing directly and positively that the money had been lost or had been expended in some way, or in some manner passed out of his hands. This is equivalent to saying that the presumption could only be overcome by direct, but not by indirect, evidence, and in this the trial court was in error.

There was evidence, as we gather from the record, tending to show that Neilon failed to make the periodical settlements with the county treasurer as required by law; that he made false entries on the backs of the stubs of receipts, indicating that all the money collected to the time of issuing such receipts had been covered into the treasury; and that the full amount of money which he should have had on hand from time to time after making settlements with the county treasurer was not in the place where Neilon usually kept the funds. All these matters of evidence indicate the existence of circumstances pertinent for the jury's consideration, as indirectly bearing upon the question whether Neilon had the funds previously collected on had at the time of the undertaking, or had theretofore disposed of them for his own use, and actually embezzled them. If they were so disposed of, and not then in his possession or under his control so as to be forthcoming, the sureties would not be liable therefor, unless the same or some part thereof had been subsequently replaced by him, and then for such part only as had been so restored. What we mean to say is this: That for all moneys embezzled prior to the execution of the undertaking, and not then restored to his possession so as to be forthcoming, the sureties would not be liable; but if any part of those funds had been restored subsequent to the giving of the undertaking, even if they were again ab-

stracted, the sureties would be rendered liable for such part as is embraced within the terms of their obligation : *Pine County* v. *Willard*, 39 Minn. 125 (1 L. R. A. 118, 12 Am. St. Rep. 622, 39 N. W. 71). We are thus explicit in view of the allegation of the complaint, namely, "that, of the sums so paid in between the said dates, the sum of $1,224.03 was collected by the said Neilon prior to the execution of the said bond, but was by him deposited after the execution thereof." What the evidence upon this subject was, we do not presume to indicate; but as there was evidence pertinent to go to the jury, from which an inference might be deducible that the funds previously collected, or some part thereof, had been embezzled prior to the giving of the undertaking, and that as such evidence has been practically taken away from them, we are constrained to reverse the judgment of the trial court and award a new trial.                                                 REVERSED.

---

Decided 16 November, 1903.