BOARD OF SUPERVISORS OF BAY COUNTY *v.* CORLISS.

SAME *v.* SAME.

SAME .*v.* MORTON.

1. COUNTIES—COUNTY TREASURER—BONDS—INTEREST ON STATE MONEYS—PUBLIC MONEYS—LIABILITY OF TREASURER.

Under 1 Comp. Laws 1915, § 298 *et seq.*, providing that all moneys coming into the hands of a public officer pursuant to any provision of law authorizing such officer to receive the same shall be denominated public moneys, interest money received by a county treasurer on State money deposited in a bank, which he converted to his own use, is public money for which said treasurer and his surety are liable in an action on his bond.

2. SAME—TREASURER'S BOOKS—ENTRIES—NOTICE—LIMITATION OF ACTIONS.

Where the county treasurer failed to comply with the provisions of the statute (1 Comp. Laws 1915, § 2383), and neglected to enter the interest items on his books, and the board of supervisors in its annual audit did not know of these items, under 3 Comp. Laws 1915, § 12330, the statute of limitations (3 Comp. Laws 1915, § 12323) would not bar an action therefor on his official bond, although not brought within the ten-year period provided in said statute. *County of Saginaw* v. *Kent, ante,* 160.

3. SAME—COUNTY ENTITLED TO INTEREST ON MONEY CONVERTED.

Said moneys having been received by the county treasurer in violation of law, and not by reason of any mistake thereunder, the judgment against him should have included interest from the dates he received said payments.

Error to Bay; Houghton (Samuel G.), J. Submitted June 11, 1919. (Docket Nos. 17-19.) Decided April 10, 1920.

Separate actions by the board of supervisors of Bay county against Edward E. Corliss, principal, and the

American Surety Company of New York, surety, Edward E. Corliss, principal, and the Title Guaranty & Surety Company, surety, and Omar J. Morton, principal, and the Title Guaranty & Surety Company, surety, on official bonds. From the judgment rendered, all parties bring error. Reversed.

*Sheridan F. Master,* Assistant Attorney General, and *John L. Stoddard,* Assistant Prosecuting Attorney, for plaintiff.

*Lewis J. Weadock,* for defendants.

MOORE, C. J. After these cases were argued as one in this court they were assigned to Justice OSTRANDER, who died before writing an opinion in them.

Plaintiff seeks in three suits, which are combined in one printed record, to recover upon the official bonds of the county treasurers, Morton and Corliss, certain interest moneys claimed to have been paid to them by certain banks, upon public funds, which interest it is claimed they converted to their own use, together with interest thereon from the dates that they were paid.

The declarations in the three cases are in substantially the same form. Bills of particulars were demanded and furnished.

In the Morton case the plea was the general issue with notice that the defendants would show in their defense:

(1) That the money upon which interest was paid "did not actually or constructively belong to the county of Bay or constitute a part of the public moneys of said county, but were current or so called initial collections of State moneys made by the county treasurer from the township treasurers, for which the county treasurer was accountable only to the State of Michigan."

(2) That the defendant treasurer was acting as the agent and representative of the State of Michigan

and not as the agent or representative of the county of Bay.

(3) That certain of the items claimed in the declaration and bill of particulars accrued more than ten years prior to the commencement of the suit and were barred by the statute of limitations.

The pleas in the other two cases were substantially the same except that the statute of limitations was not pleaded.

The cases were tried together before the court without a jury—the question of the right of the plaintiff to recover being first determined in the affirmative by the circuit judge on June 1, 1918, after which there was a further hearing and on December 24, 1918, the court determined in a further findings of fact and law the amounts for which judgments should be entered in each case. Exceptions were filed by both the plaintiff and the defendant treasurers. Judgments were entered as follows:

Against Omar J. Morton and his surety, the Title Guaranty & Surety Co., for the sum of $4,566.66,— entered January 3, 1919.

Against Edward E. Corliss and his surety, the Title Guaranty & Surety Co., for the sum of $2,140.57,— entered January 3, 1919.

Against Edward .E. Corliss and his surety, the American Surety Co., for the sum of $1,353.19,—entered January 3, 1919,

—from which the plaintiff and the defendant treasurers have brought the case here by writ of error. The surety companies have not appealed.

The defendants discuss seven assignments of error. While we have considered them all we shall discuss but one group of them. Quotations from the briefs of defendants' counsel clearly state their contention:

"The deposit of the moneys in question by defendants respectively consisted of initial or current collections of State taxes exclusively. The deposits were

not commingled with Bay county money or with the personal accounts of either defendant. The deposits were not of funds received by them as county treasurers of Bay county but solely and strictly as agents of the State of Michigan, wholly beyond the direction, control or supervision of the Bay county supervisors or auditors. Section 298, 1 Comp. Laws 1915, designating public moneys, does not authorize or permit Bay county to claim interest on the funds in question. If so, Bay county with equal propriety could claim the interest on State moneys deposited elsewhere as well as in Bay county under the claim that the State agents elsewhere were not entitled to same. Section 299, 1 Comp. Laws 1915, relied on by the court below, has no application for the reason that no claim is made of any commingling of funds. The funds were kept separate and apart.

"Section 300 fails of application because the funds were turned over to the State in the full amount exacted from the State for these taxes. The funds were not loaned by either defendant. The court misapplies sections 301 and 302. These sections expressly sustain defendants' contention that under no theory could the interest on initial State taxes belong to Bay county. The ownership of the principal fund is in the State of Michigan, and even though the interest thereon could not be retained by defendants (which is not conceded), still Bay county is without rightful claim to or ownership of the interest earned by the fund. Plainly stated, the interest belongs either to the State or to the defendants, not the county of Bay.

"Section 2376, 1 Comp. Laws 1915 (Act No. 99, Pub. Acts 1909), does not permit the designation of depository of initial State tax collections. The county treasurer is the agent of the State in making these collections not as county treasurer of Bay county but because the individual, who happens to be in that office, is designated such State agent wholly aside and apart from his agency of Bay county in the matter of the collection of other taxes. In the latter capacity he collects as agent of the county, the county taxes, formerly liquor taxes, and delinquent State taxes because the former are county taxes and the latter are a direct charge against the county by the State.

"It is also to be noticed that in the case of Mr. Morton, Act No. 99, Pub. Acts 1909, above, became effective September 1, 1909, and certainly has no application during his first term, 1907-1908, and not until after two-thirds of his second term, if at all, which, it is contended, does not. * * * It would clearly be a violation of the statute for these defendants to have deposited these State taxes in the county depository as they would then have been commingled with other moneys, and if it is the theory of the law that the individual shall not profit by the interest received from public funds, certainly it must follow that a minor subdivision of the State should not be entitled to profit from the interest on funds belonging to the State."

It may be well here to quote some provisions of the statute. Section 298, 1 Comp. Laws 1915, reads:

"(298)   SECTION 1.   *The People of the State of Michigan enact,* That all moneys which shall come into the hands of any officer of the State, or of any officer of any county, or of any township, school district, highway district, city or village, or of any other municipal or public corporation within this State, pursuant to any provision of law authorizing such officer to receive the same, shall be denominated public moneys within the meaning of this act."

Section 301, 1 Comp. Laws 1915, reads:

"(301)   SEC. 4.   In all cases where public moneys are authorized to be deposited in any bank, or to be loaned to any individual, firm, corporation, for interest, the interest accruing upon such public moneys shall belong to and constitute a general fund of the State, county, or other public or municipal corporation as the case may be." .

Section 2372, 1 Comp. Laws 1915, provides that—

"Whenever the condition of the county treasurer's bond shall be forfeited to the knowledge of the board of supervisors of the county, they shall cause such bond to be put in suit,"

—and it is provided in the following section (2373) that:

"All moneys recovered in such action shall be applied by the board of supervisors to the use of the county or to such other use or uses as the same ought properly to be applied to."

As early as *Attorney General* v. *Supervisors of St. Clair County,* 30 Mich. 388, the relationship of a county treasurer to his county and the State was ably discussed by Justice COOLEY. We shall not quote from the opinion, but content ourselves with referring to it.

In *Marquette County* v. *Ward,* 50 Mich. 174, the opinion was also written by Justice COOLEY. It was held in substance:

"A county treasurer's bond requires him to account for 'all moneys which shall come to his hands as treasurer.' *Held,* that this covers moneys collected by him under the liquor tax law though they neither belong to the county nor go into the county treasury."

See, also, *Auditor General* v. *Board of Sup'rs of Ottawa Co.,* 76 Mich. 295.

In *Board of Sup'rs of Kent Co.* v. *Verkerke,* 128 Mich. 202, Justice HOOKER, speaking for the court, said:

"These funds came into the hands of the county treasurer by virtue of his office. He held them officially, and, whatever may have been his title to such funds under the law passed upon in the case of *Perley* v. *County of Muskegon,* 32 Mich. 132 (20 Am. Rep. 637), they are certainly public moneys under section 1197 of the Compiled Laws, which took effect three months after the *Perley Case* was heard in this court. Not only does section 1197 definitely establish the rule that such funds are public moneys, and therefore can not belong to the custodian, but section 1198 requires him to keep them separate and apart from his own money, while section 1199 prohibits use by him for a private purpose under any pretext and forbids the loan of such funds. Section 1200 provides that where such funds are authorized to be deposited in a bank, the interest accruing shall belong to and constitute a general fund of the State, county or other public or municipal corporation as the case may be. Under this

section it is clear that if such money was lawfully deposited, the interest does not belong to the respondent. His counsel seems to recognize this, but contends that the law did not authorize such deposit, and consequently that the county is not entitled to the interest. If this is true, the earnings from any unlawful and prohibited use of the money could be held by the county treasurer, notwithstanding the fact that section 1200 contemplates that earnings of such funds shall belong to the public. We think public policy should preclude the treasurer from asserting his want of authority to make the deposit. But aside from this, the general rule that gives the *cestui que trust* the earnings of a trust fund is a sufficient reason for holding that the municipality, and not the treasurer, is entitled to this interest.

"It is urged that the county is not entitled to this interest in any event, and therefore the board of supervisors have no right to this writ. We think section 1200 settles that question by providing that it shall constitute a general fund for the municipality represented by the officer."

The State is not here claiming this interest, indeed it was represented by the attorney general in an oral argument at the hearing, in which an affirmance of the judgment against defendants was urged. It is clear that the funds upon which the defendants received interest came into their possession because they occupied the office of county treasurer and would not have come to them had they not held that official position. We think the statutes and decisions to which we have referred clearly establish the liability of the defendants.

The plaintiff has also brought error. The first of these is that items amounting to $213.35 were not barred by the ten-year period of limitation fixed by subd. 1, section 12323, 3 Comp. Laws 1915, in the Morton case, because his books as county treasurer did not show these items, the result of which was that the board of supervisors in its annual audit did not

know of these items. The statute, 1 Comp. Laws 1915, § 2383, provides:

"It shall be the duty of the county treasurer to keep the accounts of the treasurer with all banks or depositories, where any moneys may be kept or deposited, upon the regular books of his office, so that each item of all such accounts shall appear thereon. All items of interest, which may become due to the county from depositories, shall be entered on the books of the treasurer when received in such a manner that it shall appear upon what account and for what time such interest accrued."

Because of the failure to comply with these requirements, plaintiff says the statute of limitations did not bar the action. This contention is well taken under the case of *County of Saginaw* v. *Kent, ante,* 160, in which an opinion was handed down February 27, 1920.

In his preliminary findings the trial judge expressed himself in part as follows:

"This cause of action grew out of the fact or mistaken idea that has existed in this and many counties of the State for many years, to the effect that county treasurers receiving State taxes should, for the protection of the moneys, deposit the same in a bank or suitable depository for safe keeping, and the bank being willing to pay a certain amount of interest on such money while so deposited, the treasurers felt that they were safeguarding the funds and at the same time receiving some consideration for the extra work they did in behalf of the State, injuring nobody thereby, which practice has been followed quite universally by county treasurers in Michigan, and it is fair and just to them to say, and particularly in this case, that there has been no intention of doing anything wrong or illegal with the public moneys so deposited, the practice undoubtedly growing out of the old system of paying county treasurers fees rather than a salary, and the defendants in this case cannot be charged with intentionally using public moneys as the practice has resulted from a custom arising from a mistaken legal right."

In his second findings of fact the trial judge recurs to that subject; we quote:

"From the foregoing the principal amount having been determined as well as the liability, the only other question involved is the question of interest. The time when the interest begins to run must be determined from the nature and circumstances affecting the principal indebtedness. As was pointed out in the beginning of these findings, it appears that it was understood and supposed by both, plaintiff and defendants, that the moneys involved in this issue belonged to defendants, and this status did not change until about the time this suit was commenced. Interest in Michigan is purely statutory, and when money is paid wrongfully or by mistake, while the amount so paid may be recovered back, interest cannot be recovered in such moneys until after demand has been made for a repayment. * * *

"Since the defendants received and appropriated to their own use the interest moneys involved in this issue in good faith, believing they were entitled to the same, and that they had been advised by able counsel that they were justified in so doing, and since the plaintiff concurred in such belief, such interest money so held by said treasurers was received by them by mistake, and in consequence thereof interest would not begin to run against such moneys until after demand had been made for the same."

Counsel for the plaintiff say it was error in the court to decline to give the plaintiff interest from the dates at which each of the payments was made to the defendants. We do not think it can be said that the interest was paid or received by mistake within the meaning of that term as used in the law. The banks paid the money designedly, intending to pay it. The defendants received the money, not mistakenly, but intending to receive it, and knowing the amounts thereof.

We have already quoted certain provisions of the statute. It may be well to refer to others:

Section 299, 1 Comp. Laws 1915, provides:

"It shall be the duty of every officer charged with receiving, keeping or disbursing of public moneys to keep the same separate and apart from his own money, and he shall not mingle the same with his own money nor with the money of any other person, firm or corporation."

Section 300 reads:

"No such officer shall under any pretext use or allow to be used any such moneys * * * for his own private use, nor loan the same to any person, firm or corporation, without legal authority so to do."

Section 302 is as follows:

"In no case shall any such officer directly or indirectly receive any pecuniary or valuable consideration as an inducement for the deposit of any public moneys with any particular bank, person, firm or corporation."

Whatever may be said of the defendants personally —and we are not inclined from this record to criticize what is said by the trial judge in that regard—still they must be presumed to know the law. Its provisions are clear and unambiguous. It was the duty of defendants under the law to pay over this money promptly. They have not done so, and we are constrained to hold they should pay legal interest on the amounts withheld. Counsel can probably agree upon the amount of this interest, and if so the trial judge can add it to the amounts for which he has already found defendants liable.

The judgment is reversed. Plaintiff is given costs of this court against defendants and appellants.

STEERE, BROOKE, STONE, and BIRD, JJ., concurred. FELLOWS, J., did not sit.

The late Justice OSTRANDER and Justice KUHN took no part in this decision.