COUNTY OF KALAMAZOO *v.* FIDELITY & CASUALTY CO.

1. OFFICERS—BONDS—LIABILITY OF SURETIES—TERM OF OFFICE.
     The liability of sureties on bonds of defaulting public officials is limited to the term for which the bond is given (1 Comp. Laws 1929, § 1262).

2. EVIDENCE—PRESUMPTIONS—DEFALCATION OF COUNTY TREASURER —TERM OF OFFICE.
     In suit against surety on county treasurer's bond for second term, presumption established by plaintiff county that all of defalcation occurred during such term when he failed to turn over moneys to successor upon resignation disappeared upon offer of credible evidence rebutting it and court is then required to weigh that evidence against case as made by plaintiff.

3. COUNTIES — ACTION AGAINST SURETY ON TREASURER'S BOND — TERM OF OFFICE.
     In suit against surety on county treasurer's bond for his second term of office, finding of trial judge that $9,513.73 of $16,268.27 claimed shortage occurred prior to beginning of such term *held,* sustained by record.

4. APPEAL AND ERROR — QUESTIONS REVIEWABLE —·ADMISSION OF TESTIMONY.

Contention that finding of court was largely based upon objectionable evidence received by court is not considered where no assignments of error were made as to its admission.

5. SAME — QUESTIONS REVIEWABLE — RECEPTION OF HEARSAY EVIDENCE.

, Whether or not reception of hearsay evidence over objection of plaintiff was error is not decided on appeal where plaintiff's attorney immediately proceeded to bring out from the witness the details of the entire matter respecting which he had theretofore objected.

6. DAMAGES—INTEREST—DEFALCATION OF COUNTY TREASURER.

In suit against surety on county treasurer's bond for defalcation appearing upon resignation, interest is allowed from date of resignation rather than merely from commencement of suit.

7. COSTS—ACTION ON COUNTY TREASURER'S BOND—MODIFICATION OF JUDGMENT.

No costs are allowed plaintiff county which appealed from judgment in its favor in an alleged insufficient amount in action against surety on county treasurer's bond where judgment as rendered by trial court was modified to include more interest but not to sustain plaintiff's claims for defalcations in a previous term for which defendant was not surety.

Appeal from Kalamazoo; Stone (John G.), J., presiding. Submitted October 14, 1936. (Docket No. 88, Calendar No. 39,051.) Decided December 8, 1936.

Assumpsit by County of Kalamazoo, a municipal corporation, against Fidelity & Casualty Company of New York, a New York corporation, upon the statutory bond of its county treasurer. From judgment for plaintiff in an alleged insufficient amount, it appeals. Modified and affirmed.

*Paul M. Tedrow* (*Don B. Sharpe*, of counsel), for plaintiff.

*Alexander, McCaslin & Cholette*, for defendant.

TOY, J.   George A. Squiers, county treasurer of plaintiff county, commenced serving his second term as such treasurer on January 1, 1933.   In May, 1934, he resigned after it had been discovered that he had embezzled funds of plaintiff.

Suit was brought by plaintiff against defendant surety company upon the statutory bond of the treasurer, upon which bond defendant was. surety. A different surety had executed the bond of Squiers for the preceding term.   The total shortage in Squiers' accounts was found, upon audit, to be in the sum of $16,268.27.   Plaintiff claimed to be entitled to this amount plus interest.

The defendant admitted its liability under the terms of the bond, but claimed that it was responsible only for that portion of the defalcation occurring in the second term of Squiers.   Trial was had without jury and the trial court found for plaintiff in the amount of $6,754.54 with interest.

Plaintiff appeals from the judgment entered. ·

The bond was given in accordance with the requirements of the statute, 1 Comp. Laws 1929, § 1262.

Plaintiff contends that under the conditions of the bond, defendant is liable for the full amount of the shortage *discovered* in the second term, even if part of such shortage occurred during·the treasurer's first term.   It concedes the rule in Michigan to be that a surety on a bond given for a second term is liable only for defalcation during that term, as set forth in *Township of Paw Paw* v. *Eggleston,* 25 Mich. 36; *City of Detroit* v. *Weber,* 29 Mich. 24; *County of Cheboygan* v. *Erratt,* 110 Mich. 156; and *City of Grand Haven* v. *United States Fidelity & Guaranty Co.,* 128 Mich. 106 (92 Am. St. Rep. 446); but contends that such rule does not here apply because when Squiers resigned on May 5, 1934, and

his successor was appointed, it became the duty of Squiers to deliver over to his successor in office, all moneys belonging to said office, and that, when he did not do so, the surety was liable under the statutory condition of the bond providing as follows:

"That he will deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, papers and other things appertaining or belonging to said office."

We cannot concur with appellant in its view, for we think a reading of the cases above cited prohibits such a distinction. · These cases commit us to the rule that the liability of sureties on bonds of defaulting public officials is limited to the term for which the bond is given. This rule, it seems to us, applies with as much force and logic to that condition of the bond above quoted as to the other conditions.

Appellant further urges that proof of shortages existing at the end of the last term makes a *prima facie* case against the surety on the bond for that term and contends that there is insufficient proof in the record to overcome this presumption or meet the *prima facie* case made.

The learned trial judge in a well-considered opinion, dwelt' upon this very claim in the following manner:

"Being satisfied then that the *prima facie* view is the established rule in Michigan, we have only a presumption that all the shortage and defalcations occurred during the second term. Such presumption fails and has no probative force as a presumption as soon as credible evidence is offered rebutting it. When such rebuttal testimony is offered we must then weigh the evidence in rebuttal against the case as made by the plaintiff. *Gillette* v. *Michigan United*

*Traction Co.,* 205 Mich. 410, 414–416; *People* v. *Burbank,* 234 Mich. 600; *Corbett* v. *Williams,* 248 Mich. 541.

"Let us analyze for a moment the claim as made by the plaintiff. The aggregate claim as made by the declaration (paragraph 8) is $16,268.27. It is in evidence that when the auditor general's examination and report of the county treasurer's office was made in May, 1932 (Exhibit 33), for the year 1931, Jacob Glerum, the chief auditor in making the report and who testified as a witness in the case at bar, found a certain bank deposit slip under date of May 25, 1932, for $9,640.53. Mr. Glerum encountered this slip in reconciling the cash. The procedure was that when Mr. Glerum came into the office, probably in the month of May, 1932, to make a report upon the financial condition for the year ending December 31, 1931, he first had to reconcile the cash from the latter date to the date of the examination. In doing this he had the bank statements for all months of the year 1932 prior to the month of May, but as on the 25th of May the bank had not made out its statement, Squiers, the county treasurer, furnished him with certain deposit slips purporting to show sums of money deposited in the current month, one of which, as stated, was $9,640.53. Giving the office this credit, made it 'over' in its cash $126.80. It was found upon an examination of the affairs of the office after the defalcation of Squiers that no such deposit had ever been made by the county treasurer in any bank in which the county had funds. All the witnesses so testified, including the representatives of Lawrence Scudder & Company, and it was conceded upon the trial that the bank representatives, if called as witnesses, would testify to the same effect. At any rate, the fact stands undisputed. Subtracting the amount of cash in excess hereinbefore referred to, $126.80, from $9,640.53, shows a shortage on May 25, 1932, or at least at some date

prior to the liability of this defendant, of $9,513.73. If we then subtract this latter amount from the aggregate claim of the 8th paragraph of the declaration, $16,268.27, we have $6,754.54, which is exactly the sum which it is alleged by the 5th paragraph of the declaration that Squiers appropriated as treasurer during the period from January 1, 1933, to May 5, 1934, and for which the defendant is liable.

"In other words we need but to analyze the allegations of the declaration to arrive at the conclusion of the pleader which agrees with the conclusion of the court that $9,513.73 of the claimed shortage occurred prior to January 1, 1933."

We think that the record sustains the finding of the trial judge.

Appellant contends that much of the finding of the trial court is based upon evidence which was received by the court and which was objectionable. No assignments of error were made as to the admission of such testimony, except as hereinafter mentioned, and therefore will not be here considered.

Only one ruling of the court, relative to the admission of testimony is assigned as error. That was in reference to the testimony of defendant's witness Glerum, as brought out on cross-examination by plaintiff's counsel, as follows:

"I don't know whether or not this deposit of $9,640.53 was a deposit that was actually made in the bank or whether it was a deposit in transit. All I know is what the slip showed. He didn't tell us. He gave us the deposit slips and we went accordingly.

"*Mr. Tedrow:* I submit, if your honor please, that that is entirely based on hearsay and should be stricken.

"*The Court:* It may stand."

Whether the ruling of the court was erroneous, is not necessary to be decided, for plaintiff's counsel, immediately following the above quoted examination and ruling, proceeded to bring out from the witness the details of the entire matter respecting which he had theretofore objected.

The judgment of the court below allowed plaintiff interest only from the date of commencement of suit, namely, April 24, 1935. Appellant contends it should run from May 5, 1934, the date when it became the duty of the defaulting treasurer, upon his resignation, to turn over the funds of the office to his successor. We think appellant is correct in its contention. *Board of Supervisors of Bay County v. Corliss,* 209 Mich. 487, 495, 496.

The cause is remanded to the circuit court with directions to amend the amount of the judgment so as to include interest as hereinbefore outlined, whereupon the judgment will be affirmed, but without costs.

North, C. J., and Fead, Wiest, Butzel, Bushnell and Sharpe, JJ., concurred. Potter, J., did not sit.