HON. T. O. C. HARRISON, } JUDGES.
HON. T. L. NORVAL,

HON. ROBERT RYAN,
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE,

---

## DAVID R. BUSH ET AL. V. JOHNSON COUNTY.

### FILED APRIL 10, 1896.   No. 8254.

1. **Action on County Treasurer's Bond: PAYMENT TO SUCCESSOR: CERTIFICATES OF DEPOSIT.** An outgoing county treasurer turned over to his successor a certificate evidencing the deposit of county funds in a bank for safe-keeping, and the same was received by the incoming treasurer as a payment to him, to its amount, of such funds. The certificate of deposit was, by the new treasurer, delivered to the bank which had issued it, and was canceled and the treasurer received in lieu thereof a certificate of deposit for a like sum, payable to him as county treasurer. *Held,* That the incoming treasurer and his bondsmen were chargeable on his bond for the amount of such payment, and a subsequent failure of the bank during the time the deposit was continued, and his consequent inability to realize the money, did not relieve them of the liability.

2. ———: ———: LIABILITY OF OFFICER FOR LOST FUNDS. The dr⌐ ⌐

(1)

imposed on a county treasurer by law, and assumed by him, of safely keeping, accounting for and turning over the public funds which come into his hands by virtue of his office, is an absolute one; and where his bond is conditioned for the faithful performance of the duties of the office by him, the sureties on the bond are bound and liable in like manner and their responsibility is the same as that of their principal, and it will be no defense for either of the parties, in an action on the bond to recover public funds, predicated on an alleged failure of the treasurer to account for or pay them over, that the funds have been lost or stolen without the fault or negligence of the treasurer.

3. ———: ———: LIABILITY OF SURETIES. It is the duty of the bondsmen of a county treasurer to see that the duties of that officer are properly discharged; and if the county board shall be negligent or careless in the examination of the accounts or report of the treasurer, such examination and settlement will not be available as a defense to the sureties on his bond in an action for funds which the treasurer has failed to turn over.

4. County Treasurer: SETTLEMENT WITH COUNTY BOARD. The periodical settlements assigned by our statutes to be made between the county board and the treasurer of the county do not have in them the elements of a judicial determination of the subjects involved.

5. ———: ———. The case of *Ragoss v. Cuming County*, 36 Neb., 375, examined and distinguished.

6. ———: PAYMENT TO SUCCESSOR: WORTHLESS CERTIFICATES OF DEPOSIT: SETTLEMENT: ACTION ON BOND. A county treasurer, during his first term, had on deposit in a bank $6,000 of the public funds, such deposit being evidenced by a certificate of deposit. At the close of this term of office and the beginning of the second term, in his report to and settlement with the county board, he included and stated the amount of the certificate of deposit as so much cash, the board possessing no knowledge of the existence of the certificate, or of the deposit of the money. Before the close of the treasurer's first term, the bank failed. *Held*, That such settlement did not bind the county as an acceptance or approval of the certificate of deposit as so much cash accounted for, nor did its retention by the treasurer, or turning it over to himself as his own successor, constitute a paying over of the public funds, but was a failure to do so which rendered him, and the obligors on his bond for his first term, liable.

ERROR from the district court of Johnson county. Tried below before BUSH, J.

The opinion contains a statement of the case.

*S. P. Davidson, T. Appelget,* and *I. Reavis,* for plaintiffs in error:

The sureties are released because the evidence fails to bring their liability within the conditions of the bond. (2 Parsons, Contracts [5th ed.], 5; 1 Brandt, Suretyship & Guaranty, sec. 79; *Lang v. Pike,* 27 O. St., 498; *Reese v. United States,* 9 Wall. [U. S.], 13; *Dumont v. United States,* 8 Otto [U. S.], 142.)

The county board settled with the county treasurer and passed and approved all his accounts. This settlement was final and the county should not recover. (1 Herman, Estoppel & Res Judicata, sec. 435, and cases cited; *Richland County v. Miller,* 16 S. Car., 244; *Ragoss v. Cuming County,* 36 Neb., 376; *Supervisors of Richmond County v. Ellis,* 59 N. Y., 620; *Supervisors of Onondaga v. Briggs,* 2 Den. [N. Y.], 26; *Hobson v. Commonwealth,* 1 Duv. [Ky.], 172; *Yalabusha County v. Carbry,* 3 S. & M. [Miss.], 529; *Mobile County v. Huggins,* 8 Ala., 440; *Arthur v. Adam,* 49 Miss., 404; *United States v. Jones,* 8 Pet. [U. S.], 375; *Porter v. Directors,* 18 Pa. St., 144; *Township of Middletown v. Miles,* 61 Pa. St., 290; *Burnet v. Auditor of Portage County,* 12 O., 54; *Kendall v. United States,* 12 Pet. [U. S.], 524.)

Reference was also made to the following cases: *Cedar County v. Jenal,* 14 Neb., 254; *State v. Hill,* 47 Neb., 456.

*J. Hall Hitchcock* and *E. W. Thomas, contra.*

References: *First Nat. Bank of Wymore v. Miller,* 37 Neb., 500; *Van Sickel v. Buffalo County,* 13 Neb., 103; *Vivian v. Otis,* 24 Wis., 518; 19 Am. & Eng. Ency. Law, 544-556.

HARRISON, J.

David R. Bush was elected treasurer of Johnson county at an election held during the fall of 1889, and took possession of and commenced the performance of the duties of the office in January, 1890. He was re-elected

in the fall of 1891, and in January, 1892, closed his first and began his second term as treasurer. The other plaintiffs in error were his bondsmen for the first term. Bush's immediate predecessor in the office of county treasurer, when he turned over the office and funds in January, 1891, delivered to Bush some forty or fifty dollars in actual cash, or money in the strictest meaning of the term, and gave him certificates evidencing deposits which the retiring treasurer then had in banks, and also some checks. These were accepted by the incoming treasurer and received, as between him and the outgoing one, as payment of the amounts stated in them. One of these certificates, or checks, was for the sum of $6,000, payable by the bank of Russell & Holmes at Tecumseh. Bush presented this at the banking office of Russell & Holmes, and in lieu of it received a certificate of deposit for the sum named. This he retained through and beyond the entire time and close of his first term as treasurer. In his report to the county board, at or near the close of his first term, a certain balance was shown to be on hand. A portion of this balance was this sum evidenced by the certificate mentioned. The bank in which this money was deposited continued business in the regular manner until October, 1891, at which time it closed, a month or two before the expiration of Bush's first term. When the facts were discovered in regard to this and some other certificates of deposit,—we have here to deal particularly with this one,—action was instituted on the bond against plaintiffs in error to recover the amount as an alleged shortage. There were two principal questions raised by the pleadings: First, that Bush, the county treasurer, never received the money, the $6,000, to recover which was the object of this suit; second, that at the expiration of his term of office he made a settlement of his doings and accounts as county treasurer with the county commissioners, whereby the county became bound, and that, in consequence, it cannot, or should not be heard to assert any claim as against the treasurer

or his bondsmen.   A jury was waived and a trial had. Judgment was rendered against the treasurer and bondsmen for the $6,000 and interest thereon.   The case has been brought to this court by proceedings in error.

In regard to what transpired in January, 1889, between the outgoing treasurer and Mr. Bush, the incoming officer, in regard to the funds of the county and their transfer from one to the other of the officers, Mr. Zutavern, the retiring treasurer, testified as follows:

Q. Mr. Zutavern, what official position did you hold in this county in the years '88 and '89?

A. County treasurer.

Q. Who was your successor?

A. D. R. Bush.

Q. Do you know how much money you turned over to Mr. Bush at the time you went out of the office?

A. I do not know now.

Q. You may state to the court how you delivered the things in the treasurer's office to Mr. Bush, at the time your term of office expired, with reference to the money on hand.

A. I turned over all the money that belonged to the county to D. R. Bush.

Q. How did you turn it over?

A. Why, by checks, most of it.   I guess I had a little cash on hand, maybe $40 or $50, in the drawer, and I turned that over.   I turned him over a few certificates.

Q. State how it was you did not give him the money.

A. I had the certificates and asked Bush if he could use them, whether they would answer as well as money, and he said they would.   There was nothing said about me getting the cash, I do not think.

Q. State the facts as to whether they were equivalent to cash at that time, and for how long.

A. They were.

Q. Did Mr. Bush ever give you any information, in any form or manner, after this, that he could not use these

certificates, or ask you to take them up, or any of the things you turned over as the amount of money on hand?

A. No, sir.

Q. Why didn't you turn the money over in cash at the expiration of your term of office to Mr. Bush?

A. I had these certificates and showed them to Bush and asked him if he could use them, and he said that he could. That was my reason. He said they would do him as well as money.

Q. You were acquainted with the financial condition of the different banks upon which you had the bank certificates?

A. I think I was.

Q. You were acquainted with their condition with reference to paying of their papers presented to them, for a year after that?

Q. From that time on for another year?

A. I think I was.

Q. Well, what was it?

A. They were good.

Q. They paid all of the demands made on them?

A. Yes, sir.

A portion of the testimony of Mr. Bush is as follows:

Q. Mr. Bush, you are the defendant, one of the defendants, in this case?

A. Yes, sir.

Q. You are the principal defendant, are you not, in this case?

A. Yes, sir.

Q. (Handing witness plaintiff's Exhibit "E.") What is that paper you now have?

A. It is a certificate of deposit on the bank of Russell & Holmes.

Q. You are the person who is named in that certificate as payee, are you?

A. Yes, sir.

Q. You were county treasurer at that time?

A. Yes, sir.

Q. It was paid to you as county treasurer?

A. Yes, sir.

Q. The consideration of that check was county money?

A. It was a check given me for county money.

Q. And you took the check to the bank and got that?

A. Yes, sir.

Q. At your own request?

A. At the request of Mr. Charles Holmes.

Q. Did you ask him for the cash?

A. No, sir.

Q. You did not want it?

A. No, sir.

Q. You could have got it?

A. I do not know whether I could or not.

Q. You had every reason to believe it? You had not known them to refuse any certificates, had you?

A. No, sir.

Q. You have got money out of there as county treasurer since that was deposited there, haven't you?

A. Yes, sir.

Q. That was a part of the funds you received from Zutavern, your predecessor?

A. Yes, sir.

Q. At the end of your first term you did not turn that over except in the form of a certificate as it appears there, to yourself?

A. There was no change.

Q. Just that certificate?

A. Yes, sir.

Q. When you settled with the county board at the end of your first term, January, 1892, you turned over that certificate in your report to the county commissioners as part of the funds on hand?

A. Why, I suppose you would call it that; simply in my own hands.

Q. You turned it over to yourself as successor?

A. I believe that is what it would be.

Q. You never turned any cash over to represent that?

A. No, sir.

In this connection it may be further said that all of the testimony introduced which had a bearing upon the question of whether or not the bank of Russell & Holmes was, at the time of the transaction between Zutavern and Bush, of date January, 1890, solvent and meeting all demands for payments of money made upon it, tended to establish that it was so, and so doing, and continued in such condition for more than a year subsequent thereto. It is clear from the evidence that Mr. Bush, on assuming the duties of the office of county treasurer, received from the retiring officer a check or certificate of deposit entitling him to demand from the bank of Russell & Holmes the sum of $6,000, and that it was so accepted by him in such form, in lieu of the cash, either coin or legal tender currency; that he did not demand any other or different payment, but waived it, and the check or certificate of deposit was by him delivered to the bank and canceled, and at the request of the banker he received a new certificate of deposit for the sum named, payable to himself as county treasurer. The title or right to the sum of money involved was, by the methods stated, transferred from Mr. Zutavern to Mr. Bush, the latter being the recipient of it by reason of his occupancy of the office of county treasurer. The reception of this money from his predecessor was one of the duties which devolved upon the incoming treasurer, his due and proper performance of which, together with all others pertaining to the office, his sureties, by signing the bond, had guarantied. Giving the bond was one of the essential prerequisites of his assuming the office, without which he could not legally do so, and the sureties, by their signatures, enabled him to meet this requirement and to acquire title or right to this money, and, having so acquired it, he and the bondsmen became liable to the county for it. The fact that he elected to take a certificate of deposit evidencing the indebtedness of a bank to his predecessor in office for the amount, instead of coin or currency, and to have the certificate canceled and a new one issued payable to him-

self as county treasurer, and to let the money remain in the bank and to carry the sum thus treated in his accounts as such treasurer, as moneys or funds on hand, could in no manner or degree affect his liability or that of his bondsmen. He became possessed of the right to $6,000 of the funds of the county, and liable for its safe-keeping and to account for it, and at the request of the banker left it in the bank. This was a sufficient reception by him of the money of the county to render him and his sureties liable for it under the conditions of this bond within the rule announced in *State v. Hill*, 47 Neb., 456.

What effect the transactions we have outlined between the two treasurers would have upon the rights of the county, if any, existing or arising therefrom, against Zutavern, the outgoing treasurer, and his bondsmen, is not involved in this case and will not be discussed or decided. It is evident that Bush, the incoming treasurer, acquired the right to act in relation to the $6,000 of the county funds, and by his action it was left in the bank. This was such an act of right, of control, and disposition of the money as rendered him liable to account for it. It is argued that the treasurer is only bound to use due and ordinary care for the safe-keeping and preservation of the money of the county, and if he deposited it in the bank after using reasonable and ordinary care and caution in ascertaining the standing and solvent condition of the bank, and was watchful in this particular so long as it remained there, if the bank failed and the money was thereby lost to the county, in whole or in part, without any fault or negligence attributable to the treasurer, he was not liable for such loss, nor were his sureties so liable. There exists an irreconcilable conflict in the decisions of the courts in regard to the liability of public officers and their bondsmen for funds lost without fault or negligence on the part of the officers, but the weight of authority in this country is to the effect that a public officer and his sureties are to be held responsible for public funds lost, regardless of the question of fault or negli-

gence on the part of the officer, where the law, in positive
terms or from its general tenor and without any limita-
tion upon the obligation, requires that the officer pay
over public funds which have been received by him and
held as such. Where the statutes impose the duty of
payment it is sufficient, if the bond is conditioned for the
faithful discharge of the duties of the officer, to render
the sureties liable to the same extent as their principal.
Our statutes on the subject, by their general tenor, if not
in direct terms, require the retiring treasurer to account
for or pay over the public moneys. The bond in this
case was conditioned for the faithful discharge by the
treasurer of the duties of the office, and for the faithful
accounting for and paying over of all the moneys of the
county which he received, and both he and his sureties
became liable for any failure on his part to pay over any
of the public money, notwithstanding it may have been
lost without his fault or negligence. (*Board of Education
of the Village of Pine Island v. Jewell*, 46 N. W. Rep. [Minn.],
914, and cases cited, as follows: *United States v. Prescott*,
3 How. [U. S.], 578; *United States v. Dashiel*, 4 Wall. [U.
S.], 182; *Boyden v. United States*, 13 Wall. [U. S.], 17; *In-
habitants of Hancock v. Hazzard*, 12 Cush. [Mass.], 112; *In-
habitants of New Providence v. McEachron*, 33 N. J. Law,
339; *Commonwealth v. Comly*, 3 Pa. St., 372; *State v. Har-
per*, 6 O. St., 607; *District Township of Taylor v. Morton*,
37 Ia., 550; *Thompson v. Board of Trustees*, 30 Ill., 99; *Hal-
bert v. State*, 22 Ind., 125; *Morbeck v. State*, 28 Ind., 86;
*Ward v. School District*, 10 Neb., 293; *Wilson v. Wichita
County*, 67 Tex., 647; *State v. Nevin*, 19 Nev., 162;
*State v. Moore*, 74 Mo., 413; *State v. Powell*, 67 Mo., 395;
*Commissioners of Jefferson County v. Lineberger*, 3 Mont.,
231; *Redwood County v. Tower*, 28 Minn., 45.)

The case of *Ward v. School District*, 10 Neb., 293, cited
in the opinion of the Minnesota court just alluded to,
in support of the doctrine of strict accountability of
treasurers and their bondsmen for public money en-
trusted to the care of the treasurers by virtue of their

being such officers, may be said to be not strictly in point, for the reason that the money lost by failure of the bank, and sought in the action to be recovered of the treasurer and his bondsmen, had been deposited by the treasurer in the bank, to his own individual credit. This court held: "The defendant, while treasurer of the plaintiff district, deposited the money in question with his banker to his own individual credit. The money was intended to meet certain bonds of the district, then about to fall due, and which were payable at that bank, and the defendant so informed the banker and directed him verbally to so apply it when the bonds were presented. While in this condition the bank failed and the money was lost. Held, that the banker was the agent of the treasurer, and not of the district, and that the money was recoverable by the district in an action on the treasurer's bond." And it was said in the text of the opinion: "It was Ward's duty, under the law, to keep the money securely until properly directed, as before shown, to pay it over to the holder of the district bonds. The money was within his control, placed there by force of the statute, and if he saw fit to entrust it to the care of another, he did so at his peril."

In the opinion in the case of *State v. Sheldon*, 10 Neb., 452, in stating the liability of a treasurer for public funds it was held: "The fact that the public funds have been stolen from the treasurer is no legal justification for the failure of the treasurer to account for them." This was not a case, however, wherein the recovery of the public funds was the object of the action, but was one in the nature of a *quo warranto* to oust the defendant from the office of county treasurer of Greeley county, and in reaching a conclusion as to whether the treasurer had been guilty of neglect of duty as an officer it was observed: "This being the case, the county treasurer having failed to account for the moneys in his hands, properly chargeable against him as treasurer, is guilty of willful neglect of duty and may be removed from office. And the fact

that the moneys were stolen is no legal justification for the failure to account for them."

While it may be said that these cases are not in point and cannot be said to support the rule which holds treasurers to a strict accountability in respect to public funds which come into their possession as officers, for the reason that, strictly speaking, it was not the main question involved in either case, but only incidentally, yet it was so necessarily connected with the matters under discussion and which were determined, that it became necessary to pass upon it, and the decisions show what the opinion of the court was in regard to the responsibility of the treasurers for public money which they handled as officers.

It is argued that if the delivery of the certificate of deposit or check by Zutavern to Bush when the latter assumed the duties of the office was a sufficient payment to render Bush and his bondsmen responsible to the county for the amount thus paid, inasmuch as at the expiration of the first term of his services as treasurer and assumption of the duties of the second term, January, 1892, he turned this $6,000 certificate of deposit over to himself as his own successor, this released the sureties herein sued, who signed his bond for the first term, and the action must fail as to them. Whatever might be said of this contention had the certificate of deposit in question, at the time of the termination of the first term which Bush occupied the office as treasurer, retained its full force and vigor as a demand against the bank for the sum evidenced by its face, we must now recall to mind the fact that during the month of October, 1891, the bank payor of the certificate failed, or quit business, had passed out of existence in the business world, and the certificate of deposit was no longer a demand against a living business being, but was merely evidence of a claim against what might at some time be realized of the assets of the bank which had failed, and was certainly not entitled to be considered as such a payment when retained

by Bush in making the change from his first to his second term, of the amount of funds on hand, to him as his own successor, as to render or raise a liability for the amount of the certificate against him and his bondsmen for the second term as a loss occurring during the second term, and certainly was not a paying over of the county funds which worked a release of the sureties who signed the bond for the first term.   The failure to otherwise pay the sum expressed by the face of the certificate, at the expiration of the first term of office, was such a failure to faithfully discharge the duties of the office required by law, to faithfully account for and pay over all funds which had come into his hands or under his control by virtue of his office, as rendered him and the sureties for the first term liable therefor.

A further contention is made on behalf of plaintiffs in error, that the county board, or commissioners, had settled with Mr. Bush, comprehending in such settlement all his actions as county treasurer during his first term, and had examined his final account and approved it and made such approval a matter of record; that this constituted an adjudication of all these matters which was final and conclusive; hence this action will not lie.   Our statutory law requires the county treasurer to make periodical reports, which must show, somewhat in detail, the main transactions, more particularly in relation to disbursements of the public moneys and balances remaining on hand in the various funds, and these must be scrutinized and passed upon by the county board, and they make what is denominated a settlement with the treasurer.   But call it what you may, we are satisfied that it is nothing more than an examination of the accounts and report of the business acts of the treasurer during the period covered by it, a scanning of such acts, a "checking up," if the expression is allowable, by the county commissioners, the parties designated by law to attend to it, made in the interest of the public and the county and for the benefit of the public and the county.   Its main object

and purpose is to maintain an espionage and supervision over the finances of the county and their management by the treasurer, and secure, by such means, as great promptitude and care and exactitude in their management as possible. It is not in any sense or degree on behalf of the sureties on the bonds of the officers. Their contract is that the officer will perform his duties faithfully and properly, and for any failure so to do they become liable. The law does not contemplate that the officer shall be watched by the county or its officers for the benefit of the sureties. It is no part of the contract with the sureties that it shall be done; and where reports and settlements are required by law it does not change the obligation of the sureties or enter into their contract. It is their duty to see to it that the duties of the officer are faithfully discharged, and, if the county board should be negligent, or careless, or irregular in an examination of an account or report of a treasurer, or in what is termed a settlement, it would be no available defense to sureties on his bond in an action to recover an amount of public funds which the treasurer had failed to pay over. These periodical settlements assigned by our statutes to be made with county treasurers do not have the elements in them of a judicial determination of the subjects involved. It would not be contended that if the county commissioners state, as a matter of record, as the result of one of these so-called settlements, that the treasurer was short in his accounts in a stated sum and consequently indebted to the county in such sum, that this would constitute an adjudication of the whole matter, and, unless appealed from, it would be final and binding on the parties, and not open to attack. No more can the result obtained by the examination be said to be binding and conclusive upon the county in regard to the amounts reported on hand by the treasurer being the exact, true amounts, or their payment by the treasurer preclude the institution and successful prosecution of an action for any further sums which he has failed to report or to pay

over.   It can have no further or greater conclusiveness than any settlement made between private persons.   We are cited on this point in the case to the decision in the case of *Ragoss v. Cuming County*, 36 Neb., 375, as sustaining the position of plaintiffs in error, but we do not so read it.   It was held, "Where the county board has before it a matter which it may reject or allow, and its action thereon will be final unless appealed from, its order in the premises cannot be attacked collaterally, except for fraud," which is entirely correct; but in passing upon the report of a county treasurer the board do not reject or allow it in the sense in which these words were used in the case referred to.   It is only approved or disapproved, and not conclusively.   In the same decision it is observed: "An officer who has faithfully performed the duties of his office, and made a full settlement with the tribunal authorized to settle the same, should be permitted to rest on such settlement unless there is fraud, mistake, or imposition in making the same."   The rule announced in the third paragraph of the syllabus to the case, which we have quoted, had reference to an order of the county board allowing the county clerk deputies and the application of the fees of the office to the payment of their salaries as fixed by the board, and was entirely applicable.   What was said in the opinion in regard to the settlement was substantially the same as herein stated.   Any settlement is all right and entitled to stand in favor of an officer who has faithfully performed the duties of his office, when in the settlement there is neither fraud nor mistake, or imposition.   In support of what we have said in regard to these reports and their examination and approval and settlement, see *Crawn v. Commonwealth*, 4 S. E. Rep. [Va.], 721; *Rose v. Douglas Township*, 34 Pac. Rep. [Kan.], 1046; *Board of County Commissioners v. Sheehan*, 43 N. W. Rep. [Minn.], 690; *Britton v. City of Ft. Worth*, 14 S. W. Rep. [Tex.], 585.

In the case at bar it was shown by the testimony that at the close of his first term Mr. Bush made a report or

account which was examined by the county board. The statements of the commissioners' record in respect to the settlement had at that time were as follows: Under date January 29, 1892: "The county commissioners proceeded to settle with the county treasurer. The board adjourned to January 30, 1892." Under date of January 30, 1892: "The board then proceeded to settle with the county treasurer. Board adjourned to February 1, 1892." Under date of February 1, 1892: "The board proceeded to settle with the county treasurer. Pending settlement the board adjourned to February 2, 1892." Under date of February 2, 1892: "The board completed with the county treasurer." The account indicated the proper and true amount which had come into the possession of the county treasurer, or had been paid to him, as on hand, but it in fact included this certificate of deposit for $6,000 issued by the bank, which had, subsequently to such issuance, but prior to the time of settlement, failed. The fact that this was so included and counted by the treasurer as money on hand was not known by the county board. The funds were not asked for by the board, were not produced by the treasurer, and any approval of the account or report of the treasurer at that time was so made without any knowledge of the existence of the certificate of deposit, or that it figured or was claimed by the treasurer as a part of the moneys on hand. There was a mistake in the settlement, if any was made, to the amount evidenced by the certificate, and the paying over the funds shown by the report to be on hand, by Bush to himself, to the extent that it consisted of his retaining this certificate and counting it as so much money, was a failure to account and pay over the moneys of the county, —a failure to faithfully discharge the duties of his office as required by law, and for which he and his bondsmen became liable. It follows that the judgment of the district court must be

AFFIRMED.

NORVAL, J., not sitting.