TOOELE COUNTY v. DE LA MARE et al.

No. 5308. Decided January 7, 1935. (39 P. [2d] 1051.)

24

*A. E. Moreton* and *H. L. Mulliner,* both of Salt Lake City, for appellants.

*C. E. Baker,* of Tooele, and *J. T. Pence,* of Salt Lake City, for respondent.

COX, District Judge.

This is an action by Tooele county against Isabel De La Mare, former county treasurer of Tooele county, and National Surety Company, the surety upon her official bond, for the recovery of $58,053.35, balance of the said county's deposit in the defunct Tooele County State Bank at the time of its failure on January 14, 1931.

The facts in this case appear to be as follows: Prior to January 5, 1931, Isabel De La Mare was the duly elected, qualified, and acting treasurer of Tooele county. Annie Campbell was elected as county treasurer at the general election held on the first Tuesday in November, 1930. On November 10, 1930, county clerk Bryan delivered to her a certificate of election. On the first Monday in January, 1931, the newly elected officials of the county, including Annie Campbell, took the oath of office. On that date the following minute was entered:

"At 12 o'clock, noon, the following officers were sworn in respectively, as follows: Fred Shelton, Commissioner, Richard Jeffries, C. E. Baker, County Attorney, O. A. Evans, Sheriff; Mrs. Annie Campbell, Treasurer; Miss Millie Shields, County Recorder; D. A. Lindsay, Justice of the Peace; R. Sterling Halliday, County Assessor; the oath being administered by the County Clerk, Fred Bryan, who was, in turn, sworn by County Attorney C. E. Baker. The County Clerk having advised the Board that he had the bond for the county officers, except Mrs. Annie Campbell, which bond, he was advised by County Attorney Baker, that upon all available information, would be filed today."

At 1:30 p. m. of January 5th, the new commissioners met, and the following communication was received from Annie Campbell:

"To the Honorable Board of County Commissioners of Tooele County:
"I hereby appoint Isabel De La Mare my deputy, to act in the county treasurer's office temporarily, and I also appoint Mrs. Emma Crowton to act as assistant deputy in said office, and request their confirmation.
"[Signed] Annie Campbell."

Upon this minute entry we have the following minute entry:

"After due discussion, it is, on motion of Commissioner Shelton, seconded by Commissioner Jefferies, ordered that Isabel De La Mare be appointed deputy treasurer, at a salary of one hundred dollars per month, and that Mrs. Emma Crowton be appointed assistant in the treasurer's office, at a salary of three dollars per day, up to and including January 16, 1931."

Thereupon, and until January 16th, Miss De La Mare was in the office of county treasurer with Annie Campbell, Mrs. Campbell assuming the role of treasurer and Miss De La Mare as deputy. It further appears that on this day, January 5, 1931, Beesley & Reeves, a firm of accountants, were making a special audit of county records at this time, and among other things they were to check Miss De La Mare's books preparatory to her going out. After having taken the oath of office, Mrs. Campbell and Miss De La Mare and one of the accountants checked the cash Miss De La Mare had on hand, totaling $517.33, books checked and her books proved to check out correctly. All the cash was deposited in the bank on that day by Miss De La Mare. Mrs. Campbell accompanied Miss De La Mare to the bank, and, acting under instructions from the auditor, Miss De La Mare did not get a receipt for Mrs. Campbell. A signature card was made out, "Tooele County, by Annie Campbell, Treasurer." This being done, the cashier gave Mrs. Campbell a passbook.

He did not enter in it the amount in the bank under account of Tooele county, by Isabel De La Mare. Mrs. Campbell then drew a check on the new account for $25, petty cash. Thereafter Mrs. Campbell took the keys from Miss De La Mare and proceeded to do the treasurer's work of taking tax money, canceling the pay roll, drawing checks, approving warrants, working on account books, making entries, etc. On January 14th, the bank closed its doors. At that time there was on deposit in the bank $64,053.72. Soon after a dividend of $6,405.37 was paid, leaving due $58,053.35, the amount sued upon in this action.

Mrs. Campbell never did subscribe to the oath required nor did she give a bond. She was in the office until March 6th, when Mr. Haynes, the treasurer at the time this action was filed, was appointed. Mr. Haynes filed a bond. Mrs. Campbell remained in the office as deputy under Mr. Haynes. Miss De La Mare, on January 16th, handed in her resignation as deputy, and was not in the office after that date.

While Miss De La Mare was treasurer, and during all of the time she had the county money on deposit in the bank, she did not require the bank to give a surety bond, nor require it to deposit as collateral any bonds of the United States, or bonds of Utah, or any of its counties, cities, or political subdivisions, nor was any required after January 5, 1931, when the account was changed to Annie Campbell.

The lower court entered judgment for Tooele county against Miss De La Mare and her bondsman, the National Surety Company.

The case comes before this court on appeal, setting up fourteen assignments of error. However, in presenting the case to the court, both the appellants and the respondent consolidated and treated the assignments under ten propositions, and by referring and disposing of these propositions as they were argued to the court, all the assignments of error will be disposed of.

The appellants present the following contentions based upon their assignments of error:

1. The term of Miss De La Mare was for a fixed and definite period of four years, and under the law expired on the first Monday in January, 1931.

2. On January 5, 1931, Annie Campbell became the duly appointed, qualified, and acting treasurer of Tooele county, and, as such, was a de jure officer. There is no competent evidence in the record that she failed to file an official bond.

3. Miss De La Mare had no right to pass upon the qualifications of her successor, Annie Campbell, and that duty devolved upon the county commissioners.

4. Miss De La Mare had no right to hold over, and did not hold over after January 5, 1931.

5. Annie Campbell was at least de facto treasurer, and, as such, qualified to act and did act as treasurer of Tooele county.

6. Miss De La Mare duly accounted and paid over to Annie Campbell, as her successor, all county funds, including those in the defunct bank.

7. Respondent and its officials ratified the acts of Annie Campbell and are barred and estopped from contending that Miss De La Mare is liable for the alleged loss of the funds in the defunct bank.

8. The court erred in admitting evidence with respect to whether or not on and prior to January 5, 1931, Miss De La Mare had sufficient or lawful collateral to protect the deposits theretofore made by her; and the court further erred in making findings of fact and conclusions of law to the effect that the collateral so taken by Miss De La Mare was insufficient and/or illegal, for the reason that said evidence, findings of fact, and conclusions of law were not material to, and were outside of, the issues in this case. There was no loss before January 5th, and she had no funds and no duty to secure funds thereafter.

9. The court erred in making findings not supported by the evidence, and in failing to make findings upon material issues raised by the pleadings.

10. That in any event whether Annie Campbell was a de jure or de facto officer, or neither, the appellant surety company is not liable for any alleged acts or omissions of Miss De La Mare following the expiration of her term on January 5, 1931.

We will first take up No. 1 and No. 4, and treat them together:

1. The term of Miss De La Mare was for a fixed and definite period of four years, and under the law expired on the first Monday in January, 1931.

4. Miss De La Mare had no right to hold over, and did not hold over after January 5, 1931.

Appellants, in contending that Miss De La Mare's term expired January 5, 1931, and that she could not be held after that time, rely largely upon the Constitution of the State of Utah, article 4, § 9, which is as follows:

"The terms of all officers elected at any general election, shall commence on the first Monday in January next following the date of their election."

They contend that since the Constitution fixes the commencement of the term, Miss De La mare could only hold for four years, and that a term which is to continue until the office holder's "successor is elected or appointed and qualified," is such an indefinite term as not to be good under the Constitution, and would in fact continue an officer's term beyond the implied limitation of our Constitution. In support of the appellants' claim, they cite the following authorities: 46 C. J. 968; 43 C. J. 642. Together with cases: *State* v. *Clark,* 87 Conn. 537, 89 A. 172, 52 L. R. A. (N. S.) 912, *Commonwealth* v. *Sheatz,* 228 Pa. 301, 77 A. 547, 50 L. R. A. (N. S.) 374, 21 Ann. Cas. 54, and *State* v. *McIntosh,* 109 Minn. 18, 122 N. W. 462, 126 N. W. 1135. In examining these citations, we find that they have special reference to

cases wherein the constitutional provisions and the statutes in those several cases cited are not the same as our Constitution and statutes, in that the constitutional provisions there expressly limited the term or provided for the termination of the term, or there was no statute providing for the incumbent to hold until his successor was elected or appointed and qualified, while in our state there is no provision in our Constitution as to the termination or no fixed number of years set for the term. Attention is called to the Constitution of Utah, article 4, § 9:

"All general elections, except for municipal and school officers, shall be held on the Tuesday next following the first Monday in November of the year in which the election is held. Special elections may be held as provided by law. The terms of all officers elected at any general election, shall commence on the first Monday in January next following the date of their election. Municipal and School officers shall be elected at such time as may be provided by law."

And also Comp. Laws Utah 1917, § 1460, as amended by Laws of Utah 1921, c. 39:

"*Election of County and Precinct Officers.* The elective county and precinct officers, except otherwise provided for in this title, and except justices of the peace and constables in cities having a population of more than fifteen thousand (15,000) and less than forty thousand (40,000) inhabitants, shall be elected at a general election to be held in November, 1922, and every four years thereafter, unless otherwise provided, and shall take office at twelve o'clock meridian, on the first Monday in January next following the date of their election. Commissioners and county attorneys shall be elected as provided by law. All officers elected under the provisions of this title shall hold office until their successors are elected or appointed and qualified."

We are clearly of the opinion that section 1460 above cited is not in conflict with section 9, art. 4, of our Constitution. The language of this provision of the Constitution is couched in general terms, and leaves to the Legislature the right to fix the details of the election, and to fix the term of office. The only restriction contained in this section of the Con-

stitution relates to general elections, specifying the time the general elections are to be held, and the date following general elections upon which those elected shall take office. There is no restriction contained therein as to the term of office, leaving free to the Legislature the right to fix the term of office.

It will appear that the Constitution makes no express limitation as to the termination of the term, or of the right of an officer to hold office. The limitation contained therein relates to the term, and fixes the date when it commences. It does not in so many words fix the time for taking office, nor of the time to qualify for office.

The above-quoted statute relating to the election of county officers provides as follows:

"All officers elected under the provisions of this title shall hold office until their successors are elected or appointed and qualified."

This provision may not necessarily mean that the term of office is made indefinite, or that the term is extended. However, practically speaking, it has the effect of terminating it in form, but continuing the office in charge of the incumbent until the successor to the office has qualified. Whether a newly elected officer qualifies on the date set in the Constitution for the commencement of his term, or a month or a year later, makes little difference so far as his term of office is concerned, for the commencement date of the term is still the same. It begins on the date fixed in the Constitution. Our statute as cited above is positive and mandatory in its language, and places the duty upon the incumbent to "hold office until their successors are elected or appointed and qualified." "Shall hold office" as here used is mandatory. The word "shall," when used with reference to a public office, usually excludes the idea of discretion, this is especially true when to do otherwise would result in the benefit intended by the statute being lost to the public, we think the Legislature intended that provision in

the statute above quoted should be for the public's benefit, and not a matter of discretion with the officeholder.

In holding this a mandatory duty, we think the Legislature intended that a precaution be given to the public in its relation to officers and offices created for the purpose of carrying out the functions of government, and they recognized the good public policy of providing such machinery as would tend to create a continuity of office without gaps or breaks. This sound public policy is indicated by our court in the case of *People* v. *Hardy*, 8 Utah 68, 29 P. 1118, 1119, where the court there states:

"The right to hold over until the successor is legally elected and qualified is as much a part of his term of office as the regular period prescribed by statute, so that the length of his term depends upon the election of his successor. There can be no actual vacancy as long as the rightful occupant continues to hold office,—that is, until death, resignation, removal, or some legal disability occurs. This provision is a proper one, and is so provided in order that vacancies in office may not occur from a failure of the people to elect at the regular general election fixed by the statute for that purpose. The result necessarily follows that a failure to elect at a period fixed by the statute creates no vacancy in the office, but imposes a right and a duty upon the incumbent to continue in office until his successor is legally elected and qualified; and this right falls upon the incumbent the same whether appointed or elected."

Other cases in states whose statutes are not exactly the same but similar to ours have reached the same result: *Clark* v. *Wonnacott*, 30 Idaho 98, 162 P. 1074, *State* v. *Page*, 20 Mont. 238, 50 P. 719, and *Badger* v. *United States*, 93 U. S. 599, 23 L. Ed. 991.

As heretofore observed, our Constitution places no inhibition on our Legislature which would prevent it from providing for officers holding office until their successors are elected or appointed and qualified, and where there is no such constitutional inhibition, the general rule ■ is that an officer elected for a term holds until his successor is elected or appointed and qualified. Upon this point, Mecham on Public Officers, § 379, says:

■

"It is usually provided by law that officers elected or appointed for a fixed term shall hold not only for that term, but until their successors are elected and qualified. Where this provision is found the office does not become vacant upon the expiration of the term if there is then no successor elected and qualified to assume it, but the present incumbent will hold until his successor is elected and qualified, even though it be beyond the term fixed by law."

As indicated in this case, Miss De La Mare not only had the right to hold office after January 5, 1931, if there was no duly elected or appointed and qualified successor, but it was her mandatory duty to hold the office until her successor not only was elected or appointed, but also qualified. This does not mean that Miss De La Mare was to pass upon the qualifications of her successor, but it did place upon her the duty not to surrender her office to any person who claimed the right; that is, it placed upon her the duty to take precaution not to surrender the office to one who does not show that he is qualified to accept that office in the face of the statute. The incumbent of the office is bound and charged with the duty of knowing the law as to what the qualifications of his successor are, and that he has complied. Such a requirement is based upon sound public policy and good common sense, and simply means that an officer, before surrendering his office, should ascertain if a certificate of election has issued to his successor, if he has taken the oath of office, and filed a bond, as the law requires. This, in no sense, would place upon the incumbent the burden of passing upon the sufficiency of the bond. These requirements are well within the knowledge of any officeholder, and are easily ascertainable by any officeholder, and are necessary to protect the trust and the public welfare that is at stake in any public office.

And so in this case, we are of the opinion that the responsibilities of Isabel De La Mare did not cease on January 5th; that it was her duty to hold the office; and that it was a breach of the duties imposed by statute when she surrendered the office to a person who had not taken the known

steps and did not present the known documentary evidence that she was duly elected and qualified, and entitled to the office.

The second proposition urged by appellant is that on January 5, 1931, Annie Campbell became the duly elected, qualified, and acting treasurer of Tooele county, and, as such, was de jure officer, and that there is no competent evidence in the record to show that she failed to file an ■ official bond. Upon this point there seems to be no dispute, as far as the fact goes upon the question that Mrs. Campbell was elected, and that she received a certificate of election, that she took the oath of office along with other newly elected officers. It is clear from the evidence that she did not subscribe to the oath of office. It is also clear from the record, as contained in the commissioners' minute on January 5, 1931, that at the time she took the oath she had not filed her bond, the minutes stating that it would be filed that day, or, as amended, "supposed to be filed that day." On the question of whether a bond was actually subsequently filed, the only direct evidence is the following resolution and minute in the record of the county commissioners, pages 116 and 117:

"Upon motion of Commissioner Shelton, seconded by Commissioner Jefferies, it is ordered that the following resolution be passed, all members of the Board voting aye:

"Resolution. Whereas, Isabelle De La Mare was, on the 3rd day of November, 1926, duly elected to the office of Treasurer of Tooele County, State of Utah, for the term of four (4) years, beginning on the third day of January, 1927, and until her successor is duly elected, or appointed and qualified.

"And Whereas, thereafter, on the third of January, 1927, the said Isabella De La Mare duly qualified for said office by taking and subscribing the constitutional oath of office, and executing and delivering her official bond in the sum of Forty Thousand ($40,000.00) Dollars, for the faithful performance of the duties of her office, as provided by law, and entered on said last mentioned date, upon the performance of her duties as such County Treasurer,

"And Whereas, she continued therein as the duly elected, qualified and acting Treasurer of said county until the 16th day of January, 1931.

"And Whereas, thereafter and on November 5, 1930, one Annie Campbell was elected Treasurer of Tooele County, but failed to subscribe the constitutional oath of office or to file a bond for the faithful performance of the duties of her office, and has failed to qualify for and enter upon the duties of said office as a successor of said Isabel De La Mare, or otherwise,

"And Whereas, on the said 16th day of January, 1931, and while the said Isabel De La Mare was the duly elected, qualified and acting Treasurer of said county of Tooele, she abandoned the said office of Treasurer, and refused to further perform the duties pertaining to said office, or any of them, definitely advised the Board of County Commissioners that she was no longer Treasurer, relinquished all right and claim to said office and refused to perform the duties thereof or any of them, and that her determination was final, and that she would continue to refuse to perform the duties, thereof or any of them, and that her determination was final, and that she would continue to refuse to perform such duties,

"And Whereas, thereafter, on the 10th day of February, 1931, the Board of County Commissioners of said county made a written demand upon said Isabel De La Mare that she resume said office and perform the duties devolving upon her as Treasurer of said county, and that the business of the office and of the County was seriously impaired by her not attending to her said duties and would continue to be more seriously impaired,

"And Whereas, the said Isabel De La Mare has refused, after said demand, or otherwise to perform the duties of the said office and states that her decision is permanent and final,

"And Whereas, by reason of said permanent abandonment of said office by said Isabel De La Mare, and her final refusal to perform the duties of said office, or to enter upon the performance thereof, and no successor having been elected or appointed, and qualified, a vacancy has been caused and now exists in the office of Treasurer of said Tooele County, and has existed since January 16, 1931,

"And Whereas, it is imperative that the vacancy thus existing should be filled, in order that the office of County Treasurer may function, and that the business of the County Treasurer may function, and that the business of the County be carried forward without disastrous consequences,

"It is the sense of the Board of County Commissioners of the county, State of Utah, that said vacancy be filled and that Phares Haynes be appointed, and he is hereby appointed as Treasurer of the said

County of Tooele, to fill such vacancy and the Clerk is hereby authorized to issue a certificate of appointment.

> "[Signed] J. C. De La Mare, Commissioner,
> "Fred Shelton, Commissioner,
> "Richard Jefferies, Commissioner."

The appellant urges that the recitals contained in the above are heresay and not competent evidence on the ultimate fact of whether or not Annie Campbell ever furnished a bond. Appellant contends that the resolution was erroneously admitted by the court pursuant to the provisions of Comp. Laws Utah 1917, § 7093, and, as found in the 1933 Code (Rev. St. 1933, 104-47-15), which is as follows:

> "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state or by any other person in the performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein."

Comp. Laws Utah 1917, § 1386:

> "The board must cause to be kept:
> "1. A 'minute book,' in which must be recorded all orders and decisions made by the board, and the daily proceedings had at all regular and special meetings."

We think the minute and resolution were properly admitted, and, where the law requires records to be kept, the court has held such records competent. *Richfield Cottonwood Irr. Co.* v. *City of Richfield*, 34 P. (2d) 945, decided by this court July 27, 1934.

Appellant contends that while the resolution may be good for matters which are properly incorporated therein, a public record is not evidence for matters which are incidentally stated, or which do not properly belong in the record, citing numerous cases and citations. There can be no quarrel with the law referred to in the citations of the appellant, but we are unable to agree with the ultimate result reached by the appellant, that the matters contained in the resolution were mere incidentals and not properly in the record. The above sections of our statute merely make

the entries of public records prima facie evidence of the facts therein stated. This is not conclusive evidence, but may be rebutted; and where a record is introduced, and is not rebutted, the recitals of the record become conclusive. Wigmore on Evidence, vol. 3, § 2158; § 1532, subd. 1; § 1633, subd. 1; *Gains* v. *Relf*, 12 How. 472, 570, 13 L. Ed. 1071; *Kyburg* v. *Perkins*, 6 Cal. 675; *Evanston* v. *Gunn*, 99 U. S. 660, 25 L. Ed. 306; *Ferguson* v. *Cliffen*, 37 N. H. 86.

Even though the entry in the public record may be favorable to the person making it, the rule remains the same. 22 C. J. 802; *Shattuck* v. *Gilson*, 19 N. H. 296.

The law on this point being clearly settled, it merely remains for us to determine whether or not the minute and the resolution contained therein contain recitals which are merely incidental and not properly in the record. It will be noted in this regard that the appellant did not object to the admission of the resolution for the purpose of showing that Mr. Haynes was appointed treasurer on March 6, 1931. However, before the commissioners could make this appointment, certain facts must be found by them to exist. Among these facts would be that Miss De La Mare failed to perform the duties of county treasurer after January 5th, or January 16th. They would have to find that the duly elected successor to Miss De La Mare had failed to qualify. The finding of these facts, or the ascertaining of them, were not incidental and unnecessary things, but went to establish the right of the commissioners to fill the vacancy and to appoint Mr. Haynes, and we think it was a necessary part of the record kept to show all of those facts referred to above before the commissioners could make an appointment. We think the minute and resolution upon these points are sufficient, and that the defendants, failing to rebut the prima facie evidence established thereby, are in no way placed at any disadvantage by such a holding.

It therefore follows that Annie Campbell did not, on January 5, 1931, qualify for the office to which she was elected,

by subscribing the oath or filing a bond approved by the commissioners, nor did she qualify at any time thereafter.

Appellants urge that Miss De La Mare had no right to pass upon the qualifications of her successor, that that was a duty of the county commissioners. It is true that the county commissioners are charged with certain positive duties regarding other officeholders, one of which is that they shall approve and fix the amount of the treasurer's bond. That is a mandatory duty upon their part prescribed by the law of this state, and all officers are charged with knowing the law. Miss De La Mare in this case was charged with knowing the law, that as a part of her successor's qualifications, she not only must have a certificate of election, not only must she take the oath and subscribe it, but that she must have a bond fixed in amount and approved by the county commissioners. These facts were all easily ascertainable to her and placed upon her no burden of determining the legality of the bond or of its sufficiency, nor the legality of anything relating to the issuance of the certificate of election, but it did place a positive duty to ascertain if in fact a bond had been furnished, and if that bond was approved by the county commissioners. In this case Miss De La Mare had a most responsible position, and in charge of one of the most important offices of the county, the office which controlled and handled all the taxes and funds of the county, and if the duty were not placed upon her to find out whether or not her successor had conformed with the law as she is charged with knowing it, there would be no protection to the public, or to the funds of the county, for in such event there would be nothing which would prevent a treasurer from surrendering the office of the county and the funds to any one who claimed to be a successor, nor would it be an excuse for a person to surrender his office because another officer, or group of officers, failed to perform their duties as commanded by the statute. We therefore conclude that it is the positive duty of a county officer to see that there is a certificate of election; that the oath has been taken

and subscribed; and that a bond is given when one is prescribed.

The appellant further contends that Annie Campbell became a de facto treasurer, and that, as such, she did act as treasurer of Tooele county, and that Miss De La Mare accounted and turned over to Annie Campbell, the de-facto treasurer, the funds in her control and the ■ office. We do not think it is necessary to go into a prolonged discussion of what constitutes a de facto officer. The law relating to de facto officers is in a sense based upon sound public policy and necessity, and it is so held and laid down in the case of *Carpenter* v. *Clark*, 217 Mich. 63, 185 N. W. 868, 870:

"The doctrine of a de facto officer is said to have originated as a rule of public necessity, to prevent public mischief and protect the rights of innocent third parties who may be interested in the acts of an assumed officer apparently clothed with authority, and the courts have sometimes gone far with delicate reasoning to sustain the rule where threatened rights of third parties were concerned. In that aspect of the subject it has been said 'society could hardly exist without such a rule.' * * *

"But different considerations arise when the protection of third parties is not involved. A person clothed with apparent authority may be a de facto officer to the general public and to innocent third persons, but not such where his own rights are involved, nor to those fully advised of his status. * * *"

As stated, the policy behind the law of de facto officers is intended to give protection to the public and innocent third parties. Upon this point it is not so much a question of whether or not Annie Campbell was a de facto officer within the broad rules laid down relating to de facto officers, but whether or not Miss De La Mare and her surety can claim to come within the operation of this rule, that is, was she and her surety innocent third parties. We do not think they were. It would indeed go in the teeth of the very reasoning and purpose behind the rule of de facto officers to permit a person, by way of excuse for failure to perform a duty imposed by statute, to set up a claim as a defense that

she (De La Mare) dealt with a de facto officer, when it was the act of the person seeking to claim the defense which actually placed a person she claims to be a de facto officer in a position to clothe himself with one or more of the necessary qualifications to become a de facto officer. In this case, if Annie Campbell ever became a de facto officer, it was by virtue of the acts of Isabel De La Mare in derogation of a duty imposed by the statute not to turn the office over, or the funds of the county, or surrender either of them until she was confronted by a duly elected or appointed and qualified successor.

The fact that Miss De La Mare did, or attempted to account for the money and turned it over to Mrs. Campbell, since we have heretofore held as we have, can in no way excuse her from the consequence of her breach of duty.

It is further urged that the county commissioners on behalf of the county ratified the acts of Annie Campbell, and approved the turning over of the office and the funds to her. Upon this point, it is a well-settled rule of law that the unlawful acts or the obligations imposed by law upon one county officer cannot be ratified or waived by another county officer, and in this case the county commissioners of Tooele county could not ratify or waive what constituted violations of the statute on the part of Miss De La Mare; they could not waive or modify the duty imposed upon her not to turn her office over to a person who was not qualified; neither could they waive or ratify the obligations imposed by statute which required her not to deposit money in a bank without security as specified, and which clearly from the evidence she did prior to January 5, 1931. 22 Cyc. 1437; *City of Johnstown* v. *Rodgers,* 20 Misc. 262, 45 N. Y. S. 661.

Appellant urges that since the county commissioners had plenty of time to require Annie Campbell to furnish a bond and they failed to require that, that the county should be estopped from now trying to enforce its claim against Isabel De La Mare and her surety. This, we think,

needs little discussion, for it is well settled that the rights of the county cannot be defeated by laches, that the rights of the county against another county officer, or bondsmen of such officer, cannot be defeated upon any defense that the county commissioners, or some other county officer has been guilty of negligence, or laches, in protecting the county's interest. *Bush* v. *Johnson County*, 48 Neb. 1, 66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673; Brandt on Suretyship, § 671, p. 738; Sterns on Suretyship, § 162; *Hart* v. *United States*, 95 U. S. 316, 24 L. Ed. 479; 46 C. J. 1074.

The eighth proposition urged by appellant is that it was error on the part of the court in admitting evidence with respect to whether or not on or prior to January 5, 1931, Miss De La Mare had sufficient legal collateral to protect the deposits theretofore made by her in the ▮▮▮▮ bank, and that the admission of the evidence showing the insufficiency of this security and that the money was illegally deposited, and that the findings of the court on that issue are error, because they were immaterial and outside the issues of the case. We think there is no merit to this contention. Our statute, Comp. Laws Utah 1917, § 4500, as amended by Laws of Utah 1929, c. 46, makes it a duty upon county treasurers in handling public funds to require either a surety bond or a deposit of United States government, state, or municipal bonds of this state to secure any such deposit. It is well settled in this state, as a matter of public policy of this state, that any person who has custody of public funds is held to strict accountability, and there are no exceptions or qualifications to this rule. Comp. Laws Utah 1917, § 1492; *Salt Lake County* v. *Surety Company*, 63 Utah 98, 222 P. 600.

When Miss De La Mare, in disregarding the duty imposed upon her by statute to take proper security to protect the deposit made by her, violated a duty, this act is directly responsible for the loss incurred by the county, for in this case, had Miss De La Mare done her duty and required the speci-

fied collateral for her deposit, then, even though she did turn the office over to Mrs. Campbell, the county would not have suffered a loss, for had a surety bond been given, in which case Tooele county would have been the beneficiary, or if United States bonds, or state or municipal bonds of this state had been given, they would have been in the vaults of the county treasurer's office, or under her control when the office was surrendered to Mrs. Campbell. It therefore follows that one of the direct results of Miss De La Mare's dereliction of duty resulted in loss to the county, nor can she excuse herself at this late hour by saying had the commissioners insisted on a bond from Mrs. Campbell, there would have been no loss incurred by the county because of Miss De La Mare's breach of duty. And furthermore, since the statute makes it a duty for a county treasurer to require a surety bond or collateral to secure deposits of public moneys, it becomes a duty of the officer to comply, and one of the purposes of the bond of an officer in control of public money is to guarantee among other things the compliance of this duty. In this state the surety is held to the same high degree of accountability as the principal, and it is the surety's obligation to see that there is a strict accounting, as stated by our own Supreme Court in *Salt Lake County* v. *Surety Company,* supra, wherein the court quoted with approval from *Town of Cameron* v. *Hicks,* 65 W. Va. 484, 64 S. E. 832, 17 Ann. Cas. 929, in which the annotator says:

"When the condition of the officer's bond is that he will faithfully discharge the duties of the office, and when the statute, as above stated, imposes the duty of payment or accountability for the money without condition, the obligors of the bond are subject to the same high degree of responsibility. The reasons upon which these propositions rest are to be found in the unqualified terms of the contract and in considerations of public policy."

In this case the surety company urges that since no loss occurred until after January 5, 1931, that their liability does not extend beyond this or for loss beyond the term of Miss De La Mare. We have already held that it was the duty of

Miss De La Mare to hold the office until a successor was elected or appointed and qualified. We think it makes little difference when the loss actually occurred to the county, if the primary cause of the loss was the breach of a duty imposed by law as in this case.

As part of the last proposition urged by the appellant, and in connection therewith, they take the position that since Miss De La Mare accompanied Mrs. Campbell to the bank, and in pursuance of instructions of the auditors auditing the books, caused a transfer of the account to be made from Isabel De La Mare to the treasurer of Tooele county a sufficient accounting was had.

The facts upon this point are in brief these: Miss De La Mare took all of her cash to the bank and banked it, she was accompanied by Mrs. Campbell. After Miss De La Mare made the deposit of all of her cash and got her deposit slip, this deposit was in the name of Tooele county, by Isabel De La Mare. Mrs. Campbell then asked for a signature card, and stated that she wanted to transfer the account. She was given a card, and it was filled out, "Tooele County, by Annie Campbell, Treasurer." She was also given a passbook "Tooele County, by Annie Campbell, Treasurer." No receipt was taken. However, it will be noted that in the passbook there is no entry made of the amount of money that was on deposit in the bank in the name of Tooele county by Isabel De La Mare, treasurer. After this was done, Mrs. Campbell cashed a $25 check for petty cash. The keys to the treasurer's office were turned over to Mrs. Campbell. Even though we assume it was not the positive duty of Miss De La Mare to have required a depository bond, or collateral as specified in the statute, we do not believe that these facts show the kind of an accounting or such a sufficient accounting as is contemplated under our statute, and under the general rules of law which require a public officer in control of money to account and turn over to a successor the moneys he holds. It would indeed show a lack of good common sense and indeed be against public policy, where the facts are as stated in this

case, to hold that an accounting and turning over to a successor of the moneys held by the incumbent had been had, especially when the deposit sought to be turned over is a deposit that is made in violation of the statutory requirements. No money was transferred, or accounted for, but simply on oral transfer of a deposit with the consent of the bank, without any consideration whatsoever on the part of the outgoing treasurer of her duty to have a depository bond or proper collateral, or without the incoming treasurer making any effort to require it, and with the bank participating and knowing full well what was required, or at least being chargeable with knowing what was required of them in order to be legally entitled to keep the deposit. The public welfare and public interest prevents the acceptance of any such flimsy state of facts under the circumstances in this case as being such an accounting contemplated under the laws of this state, nor can such a flimsy state of facts be set up as an accounting, or settlement, between an incumbent and an incoming officer as would constitute a defense against a subsequent action to enforce the incumbent's liability for loss. In fact, it may well be said that what the law contemplates is not an assignment of claims or accounts for money which the incumbent has had under her control, but to account for the money collected and in her custody by the actual payment of money, or what could be recognized the same as money. The transaction here falls far short of this. 46 C. J. 1041; *Cedar County* v. *Jenal,* 14 Neb. 254, 15 N. W. 369; *Cawley* v. *People,* 95 Ill. 249; *Bush* v. *Johnson County,* 48 Neb. 1, 66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673.

In view of the foregoing conclusions reached by this court, we find that no error was committed by the court below. The judgment of the court below is therefore affirmed.

ELIAS HANSEN and FOLLAND, JJ., concur.

STRAUP, C. J., and EPHRAIM HANSON, J., dissent.

MOFFAT, J., did not participate herein.